PATRICK E. KING v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY
COMPANY.[1]

June 12, 1908.

Nos. 15,536—(73).

**Question for Jury.**

Appellant was engaged in constructing piers for a railway bridge over
the Missouri river, for which purpose it furnished its workmen with a
derrick and attachments, operated by an engine and friction drums, and
located on a barge. *Held*, whether the appliance was reasonably safe
under the circumstances was a question of fact for the jury.

Action in the district court for Dakota county to recover $50,000
for personal injuries. The case was tried before Crosby, J., and a
jury which returned a verdict in favor of plaintiff for $30,000. From
an order denying defendant's motion for an order setting aside and
vacating the special finding and the general verdict of the jury and
for a new trial in case plaintiff would accept $18,000 in full payment
of his damages in the action, defendant appealed. Affirmed.

*F. W. Root,* for appellant.

*John D. O'Brien, Armand Albrecht,* and *J. M. Millett,* for respond-
ent.

LEWIS, J.

Respondent recovered a verdict which must stand unless it conclu-
sively appears from the evidence that appellant was not negligent in
its duty to furnish safe implements with which to carry on its work.
Appellant was engaged in constructing a bridge over the Missouri
river in South Dakota, and the work in progress at the time of the ac-
cident was transferring timber from a barge in the river to a certain
caisson, by means of a derrick and engine which were located on a
barge. The derrick was of a standard type, composed of two per-
pendicular uprights or leaders, thirty five or forty feet long, with a
thirty-foot boom, swung from side to side by lines running from the
boom back to certain appliances called "nigger-heads," around which
the lines were wound, and which, by revolving, pulled the boom to
right or left. The boom was suspended in the air by a line, or cable,

[1] Reported in 116 N. W. 918.

which led from a point over the top of the mast and back to a drum, which was held in place by the strain of the boom line; but a heavy counterweight was so adjusted that a slight slackening of the taut boom line would cause the dog to drop out and let the boom fall. At the time of the accident respondent was guiding the load attached to the end of the boom line, when suddenly the line gave way at the drum and the boom fell on him, causing severe injuries. The charge of negligence is that the derrick and attachments were defective.

It was claimed at the trial that the accident was caused through the negligence of the engineer, a fellow servant of respondent, for which reason he could not recover. The duty of firing the engine and manipulating the friction drums, so as to release or wind up the cable, was attended to by one man, the engineer, who also controlled the drums by means of foot brakes. A man was employed to hold and manipulate the so-called side lines of the boom, and it was his duty to so control the lines that they would tighten on the nigger-heads, and so give the machinery an opportunity to take up the slack in the lines, and swing the boom in the desired direction. The engineer testified that the cable gave way, releasing the boom, at a time when he was engaged at the engine, and that the accident was not caused by any act of his. One witness, who examined the derrick for the purpose of testifying as an expert, stated that the side lines were an unusual attachment. He also testified that if the boom was slackened, or eased, to the extent of a quarter or half an inch, the counterweight would lift the catch of the dog out of the cogwheel, and so release the cable and drop the boom.

The theory of respondent was that, considering the fact that the derrick stood on a barge, the movement of the derrick naturally caused it to sway more or less in the course of operation, and that the manipulation of the side lines over the nigger-heads, under the circumstances, tended to ease the boom line sufficiently to release the dog. In answer to the special questions, the jury found that the instrumentality was not a reasonably safe one, if properly operated, and that the injury was not caused by the negligence of a fellow servant. It does not appear from the record that the jury were wrong in their judgment, or that the evidence conclusively established that the appliance was reasonably safe.

Affirmed.