JOHN ENGLER v. LA CROSSE DREDGING COMPANY.[1]

July 10, 1908.

Nos. 15,662—(164).

### Negligence—Contributory Negligence of Servant.

The evidence is sufficient to sustain the jury in finding that certain brake attachments upon appellant's ditching machine were defective and unsuitable for the purpose of holding the buckets in place at the ends of the supporting arms, that appellant was negligent in failing to inspect and repair the same and in maintaining them in use, and that respondent did not assume the risk of his occupation, and was not guilty of contributory negligence in placing himself under the suspended buckets for the purpose of repairing the traction part of the machine. No error in the charge and rulings.

Action in the district court for Winona county to recover $15,000 damages for personal injuries sustained by the fall of buckets attached to a ditching machine while plaintiff was in defendant's employ. The case was tried before Snow, J., and a jury. At the conclusion of the testimony defendant moved for a directed verdict in its favor. The motion was denied and the following questions were submitted to the jury, to which it made the answers given respectively therewith.

1. Was the defendant guilty of negligence in originally adopting and putting into use the braking apparatus described in the evidence? Answer: Yes.

2. Did the defendant negligently fail to keep said braking apparatus in proper condition and repair? Answer: Yes.

3. If you answer the second question in the affirmative, then state in what particulars defendant so failed. Answer: In not keeping the cable and braking apparatus in proper repair.

4. If by your answers to the foregoing questions you find that defendant was negligent, was its negligence the proximate cause of the injury to plaintiff? Answer: Yes.

[1] Reported in 117 N. W. 242.

5. If you answer the fourth question in the affirmative, then state in what the negligence consisted that was such proximate cause. Answer: In the defect of the braking appliances.

6. Was the plaintiff guilty of negligence, directly contributing to cause his injury, in occupying the position which he did occupy while attempting to repair or adjust the sprocket chain? Answer: No.

7. Did the plaintiff know and appreciate, or ought he, in the exercise of ordinary care, to have known and appreciated the risk or danger to him involved in occupying such position on said occasion? Answer: No.

8. Did the plaintiff in and by his contract of employment with defendant engage to take charge of and keep in repair, from the time of his beginning work, the machinery in use by defendant in the process of ditching? Answer: Yes.

9. If you answer the eighth question in the affirmative, then did the plaintiff have, before the injury to him, time and opportunity sufficient, by the use of ordinary care and vigilance, to discover and repair the defect, if any there was, in said braking appliance? Answer: No.

The following explanation of the machinery, found in the respondent's brief is supplemental to the description given in the opinion: The rails on which the ditching machine ran were laid on either side of the ditch, so that the machine was astride the ditch. The steel arms extending out at the front end of the machine were about thirty five feet long and their upper extremities were about sixteen feet above the ground. They were rigid and always stood in the same relative position. Upon each of them there was a track or runway extending their full length upon which the buckets ran. There were two buckets, set end to end and fastened together. These buckets moved back and forth upon the runways always moving together and descending one arm and ascending the opposite arm, and then when the engine was reversed, moving in the same way in the opposite direction. As the buckets descended the forward one would scoop up the earth at the foot of the arms and then ascend the opposite arm and dump, and then both buckets would come back and the process be reversed. Near the upper extremities of each arm there

was attached a device known as the cage. Its purpose was to dump the full bucket when it approached the end of the arm. This result was accomplished in the following manner: At the point where the forward wheels of the bucket reached the entrance to the cage, the rails of the main runway were cut through so as to permit these wheels to leave the runway and run down upon the angle irons which formed the cage. The rear trucks were larger and would pass over this opening and continue on up the main runway, thereby overturning and dumping the bucket. As soon as a bucket dumped the engine was stopped, and if it was necessary to hold the bucket up at the dumping place a brake was applied to the drum in the engine house which operated a steel cable which carried the buckets to and fro. When the buckets were up at the dumping place on either runway, there was nothing to hold them in place or to prevent them from slipping back to the base of the runways except the brake. These buckets weighed about two tons, and it is apparent that it would require a strong and secure brake to hold them up on the steep incline whenever the engine was disconnected from the drums. There were two drums, one to operate either bucket.

In moving the machine back and forth it was necessary that the buckets should be suspended above the ground, otherwise they would drag upon its surface. In the ordinary operation of the machine they were left at the dumping position near the upper extremity of the arm, and were held there by the friction brake upon the drum while the machine was being moved upon the track.

A verdict in favor of plaintiff for $8,000 was returned. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*C. H. Rossman,* for appellant.

*Webber & Lees,* for respondent.

LEWIS, J.

Appellant was operating a ditching machine, known as a "Jacobs Steel Excavator," and respondent, while employed in making repairs on it, was seriously injured by the falling of the buckets. A detailed description of the machine may be found in the record, but for the purposes of this appeal we shall not attempt any more than a general

description. The machine rested upon trucks which ran on rails, and at the front of it were two steel arms extending out at right angles about 45°, upon which the buckets were carried. The same engine which operated the buckets also operated the traction part, and moved the machine back and forth on the track, but when propelling the machine the engine was wholly disconnected from the drums which operated the buckets. The buckets were dumped by an automatic arrangement at the extremity of each arm, and were held in place, when so desired, by a friction brake on the drums. This brake was an iron band three inches wide, lined with wood, and was applied to the circumference of the drum and operated by a hand lever. A small wire cable, about one half inch in diameter and about seven feet long, connected the lower extremity of the lever with the brake shoe, passing around a pulley wheel in so doing. When it became necessary to set the brake, the lever was pulled back by the operator and held in place by means of an iron dog bolted to the lever, which hooked over a rod or pipe about one and one fourth inches in diameter. There was no arrangement for locking the dog in place, and it was necessary to press it down with the hand or foot in order to hook it over the rod, and if anything should occur to slip the hook end of the dog from the rod, the brake would be automatically released and the buckets would drop. Appellant was charged with negligence for failing to inspect the machine and in maintaining this brake appliance; it being claimed that the same was defective and unsafe for the purposes required.

Respondent commenced work for appellant on Tuesday, June 5, 1906, and the accident occurred the following Friday, the 8th. He testified that for two days he worked at repairing a small engine, which had no connection with the machine which operated the buckets; that on Thursday, the third day, he, with others, worked with the traction part of the machine until about two o'clock p. m., when the machine stuck, on account of a defective rail, and they worked all the rest of the day getting the machine off the defective rail; that on Friday morning, after getting the machinery in shape, they moved the machine back to the point where the rail was defective, and it stuck again, and in the attempt to back the machine the sprocket chain slipped out of the sprocket and became taut; that respondent

was told to fix it, and he picked up his hammer and chisel and went down and sat on the edge of the ditch in front of the machine where the sprocket was located, which happened to be in line with the path of the buckets, which at that time were suspended at the dumping point on one of the arms; that he struck the chain one or two blows with his hammer, but failed to get it into position; that the engineer, who was watching him, said he would go in the engine room, get a monkey wrench, and give the chain a little slack. The evidence tends to show that before he reached the engine room, and while respondent was yet in the same position at the sprocket wheel, the buckets suddenly dropped, crushing him to the ground.

Upon an examination, which took place immediately after the accident, it was discovered that the cable which connected the lever with the brake and was concealed underneath the floor of the deck, had become worn to such an extent that two or three of the strands were cut in two. It was conclusively shown that the buckets were held in place at the top of the steel arm by means of the brake apparatus described; that the engine was originally manufactured with a brake attachment of an entirely different pattern, which was declared by experts to be the safest appliance made for the purpose. The iron dog and cable already described was a makeshift arrangement, made and put on the machine by the persons who bought it from the manufacturers and who sold it secondhand to appellant. There was a dispute between the experts as to whether it was a safe appliance for such purpose, and as to whether the other brake attachment originally manufactured to be sold with it, could have been attached to a machine and engine of that character.

1. Appellant had owned the machine only a short time, and had not inspected it with a view to discovering whether the brake attachment was suitable and safe. The court submitted to the jury the question whether under all the circumstances appellant had violated its duty in furnishing a suitable and safe appliance. Appellant cannot be excused by the mere fact that it bought the machine secondhand, supposing it to be of the standard type, complete in all its parts, and suitable for the purpose for which it was sold. Conceding that appellant had no knowledge of the fact that the original brake attachment had been omitted, and that another had been made and put on,

that would not necessarily be sufficient excuse for failure to inspect the machine before putting its employees at work on it.

It is not necessarily fatal to respondent's case that it does not definitely appear for what particular reason the buckets fell. They were held in place by the brake only, did not fall of their own accord, and could not have fallen, had the brake not become released. The machine was not in operation at the time, and there was no evidence that the engine or brake were being manipulated. If the brake gave way by reason of the straightening of the worn-out cable, then the evidence was sufficient to sustain negligence on the part of appellant. On the other hand, if the dog attachment slipped off the hook, and the brake was released as a result, then the evidence was sufficient to prove appellant was negligent in using such an appliance. In this connection attention is called to the case of King v. Chicago, M. & St. P. Ry. Co., 104 Minn. 397, 116 N. W. 918, where the facts are quite similar.

2. We do not think it conclusively appears that respondent was guilty of contributory negligence simply because he might have taken some other method of releasing the sprocket chain, and thus avoided placing himself in a position where the buckets would strike him if they fell. There was some evidence tending to show that he might have gone down under the machine, that he might have opened the chain by unscrewing a nut, or that the engineer might have been required to let the buckets down before commencing the work. But whether respondent should, under all of the circumstances, have pursued one or the other of these courses, was for the consideration of the jury, in determining whether he did what an ordinarily prudent man would have done under the same circumstances. Respondent testified that he had no knowledge of the character of the brake attachment, and that his attention was not called to its nature; that he had not inspected it, and had no reason to believe the brake was unsafe. If this was true, it was not clearly an act of negligence on his part in going under the buckets for the temporary purpose of releasing the sprocket chain.

3. Whether respondent assumed the risk of his employment depends upon what the contract was. If, as contended by appellant, he was employed as an expert for the express purpose of inspecting, putting in repair, and operating the machine, then it would follow that he

assumed the risk in taking his position underneath the buckets without having first ascertained to his own satisfaction whether the appliance which held them in place was sufficient. On the other hand, as contended by respondent, if he was employed for the purpose of assisting in operating the machine in order to speed the work carried on, and to make repairs as occasion arose, then he did not necessarily assume the risk of working about the machine in the manner he did without first inspecting and determining the sufficiency of the appliances which held the buckets. The court submitted this question to the jury, and properly instructed them upon that subject, and, although the evidence is somewhat conflicting and indefinite as to the nature of respondent's duties, we think the case was correctly disposed of by the court, and find no error in the charge.

Affirmed.