ROUSE v WESLEY

Docket No. 134049. Submitted June 2, 1992, at Detroit. Decided November 2, 1992, at 9:55 A.M. Leave to appeal sought.

Brenda J. and Johnny Rouse brought an action in the Wayne Circuit Court against Dr. L.A. Wesley, Outer Drive Hospital, and Dr. A. Planas, alleging that Mrs. Rouse became pregnant as a result of the defendant's negligent failure to perform a successful tubal ligation on her and seeking not only damages for the pain and suffering and costs associated with the pregnancy and birth of their child but also the costs associated with raising the child to majority. The court, John A. Murphy, J., granted summary disposition for the defendants with respect to the claim of damages for the cost of raising the child to majority, but permitted the plaintiffs to proceed with the claim of medical costs and damages for pain and suffering. The court subsequently dismissed without prejudice the plaintiffs' remaining claim. The plaintiffs appealed.

The Court of Appeals *held:*

Michigan recognizes an action for wrongful pregnancy where, as here, the pregnancy allegedly results from the negligent failure to perform a medical procedure properly. However, as a matter of public policy, the customary costs associated with raising and educating a normal, healthy child cannot be recovered as damages. As a matter of law, it is presumed that the value of the life of such a child exceeds the customary costs associated with raising and educating the child.

Affirmed.

Damages — Physicians and Surgeons — Malpractice — Wrongful Pregnancy.

The customary cost of raising and educating a normal, healthy child may not be recovered in an action for damages for an unwanted pregnancy that allegedly resulted from the malprac-

References

Am Jur 2d, Prenatal Injuries, Wrongful Life, Birth, Or Conception §§ 166-173.

Recoverability of cost of raising a normal, healthy, child born as result of physician's negligence or breach of contract or warranty. 89 ALR4th 632.

tice of a physician or surgeon; the value of the life of such a child presumptively is greater than the customary costs of raising the child.

*Gittleman Paskel Tashman & Blumberg P.C.* (by *Clifford Paskel*), for the plaintiffs.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for L.A. Wesley, M.D.

*Cozadd, Shangle, Smith & Andrews* (by *Alfred John Eppens*), for Outer Drive Hospital.

*Siemion, Huckabay, Bodary, Padilla & Morganti, P.C.* (by *Raymond W. Morganti*), for A. Planas, M.D.

Before: SAWYER, P.J., and MURPHY and L. P. BORRELLO,* JJ.

MURPHY, J. Plaintiffs appeal from an order of the Wayne Circuit Court dismissing their wrongful pregnancy action against defendants. We affirm.

This case arose from an unsuccessful tubal ligation performed on plaintiff Brenda Jean Rouse by defendant Dr. Wesley at defendant Outer Drive Hospital on October 12, 1987. Before the surgery, Mrs. Rouse was informed that the procedure would result in her being unable to conceive a child and that the procedure would be permanent.

After the surgery, defendant Dr. Planas was provided tissue samples taken during the surgery for the purpose of pathological review and diagnosis in the course of his employment at Outer Drive Hospital. Review of the tissue samples taken during surgery allegedly demonstrated that, although a portion of the fallopian assembly was removed, the tubular structure was not interrupted. Plain-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tiffs were never informed of the results of the tissue analysis. Mrs. Rouse became pregnant after the surgery, and on December 8, 1988, plaintiffs sixth child was born.

Plaintiffs filed this wrongful pregnancy action, alleging that defendants were negligent and seeking the costs associated with raising the child to majority. The circuit court permitted plaintiffs to amend their complaint to seek additional damages for pain and suffering and the costs associated with Mrs. Rouse's pregnancy. While the circuit court permitted plaintiffs to maintain the action for medical costs and pain and suffering, it granted defendants summary disposition with respect to plaintiffs' claim for damages for the cost of raising the child to the age of majority, following this Court's decision in *Rinard v Biczak,* 177 Mich App 287; 441 NW2d 441 (1989).

This Court denied plaintiffs' application for leave to appeal. Unpublished order, entered October 23, 1990 (Docket No. 131570). Plaintiffs then moved for dismissal without prejudice of the remaining counts of their complaint, apparently to enable them to bring this appeal as of right. The circuit court dismissed the action, and plaintiffs now appeal from the order of dismissal, contending that they should be permitted to maintain an action for the cost of raising the child to majority as part of their suit for wrongful pregnancy.

In Michigan, causes of action are recognized for what has been labeled wrongful birth and wrongful pregnancy, but there exists no cause of action for wrongful life. Wrongful birth is a tort action brought by parents of a child with a birth defect against a doctor or other person whose negligent failure to inform the parents of the risk of the birth defect deprived the parents of the opportunity to make an informed decision to avoid or

terminate the pregnancy. *Rinard, supra,* 290-291; *Proffitt v Bartolo,* 162 Mich App 35, 40; 412 NW2d 232 (1987). The cause of action for wrongful birth is available to parents to recover the extraordinary medical expenses and costs of raising the child, as well as emotional harm.[1] *Rinard, supra,* 296.

Wrongful life is a tort action brought on behalf of a child with a birth defect in which it is alleged that but for the negligent advice to the parents, the child would not have been born. This cause of action is not available in Michigan and is not recognized in a majority of other jurisdictions. *Proffitt, supra,* 37, 47-59. See, e.g., *Goldberg v Ruskin,* 113 Ill 2d 482, 485; 101 Ill Dec 818; 499 NE2d 406 (1986); *Bruggeman v Schimke,* 239 Kan 245, 249-254; 718 P2d 635 (1986).

The present case involves a third type of action, known as wrongful pregnancy or wrongful conception, which involves negligence relating to sterilization or contraception. *Proffitt, supra,* 41, n 2. This cause of action is permitted in Michigan, although there is a dispute concerning the types of damages that are recoverable. *Rinard, supra.* In this case, we are called upon to decide the narrow question whether plaintiffs, in the context of a wrongful pregnancy action, can seek to recover as part of their damages the customary cost of raising and educating the child.[2]

---

[1] This cause of action is distinct from a situation where negligent injury to a normal fetus results in birth defects to the child. See *Proffitt, supra,* 41, n 2.

[2] We are not called upon to decide what recovery, if any, would be available to a party situated similarly to plaintiffs for raising a child that is not normal and healthy. However, we are not unsympathetic to the statement in *Rinard*: "We question whether the benefits rule should ever be used when it requires that a value be placed on human life." *Rinard, supra,* 296. We also do not decide what recovery may be available to plaintiffs in this case for medical costs, lost wages, mental distress, pain and suffering, or other damages because this issue has not been raised on appeal.

Resolution of this case will resolve a conflict between panels of this Court. In *Troppi v Scarf,* 31 Mich App 240; 187 NW2d 511 (1971), this Court permitted the plaintiffs to maintain an action for the cost of raising their child to majority. In *Troppi,* the plaintiffs (husband and wife) had seven children and decided to limit the size of their family. The plaintiffs' doctor prescribed oral contraceptives for Mrs. Troppi, but the defendant pharmacist negligently provided Mrs. Troppi with tranquilizers. Mrs. Troppi conceived and delivered a healthy child.

The plaintiffs sued the pharmacist, seeking damages for Mrs. Troppi's lost wages, medical expenses, pain and anxiety of pregnancy and childbirth, and the economic costs of raising their eighth child. The trial court dismissed the action, reasoning that whatever loss was incurred by the plaintiffs was offset by the benefit to the plaintiffs of having a healthy child. *Id.*, 244. This Court reversed, determining that the trier of fact should be allowed to assess the damages under the "benefits rule," in which the trier of fact evaluates the benefits of having the child under the circumstances and then subtracts the dollar value of those benefits from the dollar value of the injury to arrive at the damages amount.

This Court reached a similar result in *Green v Sudakin,* 81 Mich App 545; 265 NW2d 411 (1978). In *Green,* the plaintiff wife requested that the defendant doctor perform a tubal ligation immediately following the birth of her third child. The defendant failed to perform the surgery and, according to the plaintiffs, also failed to inform the plaintiffs that the surgery had not been performed. The plaintiffs consequently failed to take birth control precautions, and a fourth child was born. The plaintiffs sued the defendant, seeking in part

the cost of raising the child. The jury awarded the plaintiffs $95,000. *Id.,* 547. This Court affirmed, expressly following *Troppi. Green, supra,* 547. This Court rejected the defendant's argument that the award of such damages would be speculative, noting that the computation of the expense of raising a child, although difficult, should not operate to bar recovery. *Id.,* 547-548.

More recently, however, in *Rinard, supra,* this Court rejected the reasoning in *Troppi,* and abandoned the benefits rule in the context of a suit for failure to diagnose pregnancy. *Rinard, supra,* 290-291, 296. In *Rinard,* plaintiffs Gordon and Stephanie Rinard had taken their fifteen-year-old daughter, Christine, to the defendant, Dr. Biczak, in May 1983. Dr. Biczak determined that Christine was not pregnant at that time. In December 1983, Stephanie again took Christine to Dr. Biczak. This time, Christine was pregnant, but the defendant incorrectly concluded that she was not. In July 1984, Christine gave birth to a normal, healthy baby, whom plaintiffs Gordon and Stephanie Rinard adopted.

The plaintiffs filed suit, alleging medical malpractice for the defendant's failure to diagnose Christine's pregnancy in December 1983. Christine's claim was dismissed on motion of her own counsel before trial. During trial, the plaintiffs testified that Christine probably would have sought an abortion had the defendant properly diagnosed Christine's pregnancy in December 1983. The jury awarded the plaintiffs damages for the cost of raising the child. This Court reversed, holding that neither natural nor adoptive parents can recover the costs of raising a normal, healthy child, because the costs of raising the child are always outweighed by the benefits of the child's life. *Rinard, supra,* 290.

A survey of recent opinions of other jurisdictions reveals that an apparent majority of the jurisdictions deciding this question hold that, while there is a cause of action for wrongful pregnancy, parents cannot recover damages for the costs of raising the child, sometimes called the "limited damages" view. See, generally, 89 ALR4th 632; *Girdley v Coats,* 825 SW2d 295 (Mo, 1992) (en banc); *Butler v Rolling Hill Hosp,* 400 Pa Super 141, 144; 582 A2d 1384 (1990); *Atlanta Obstetrics & Gynecology Group v Abelson,* 260 Ga 711, 716-717; 398 SE2d 557 (1990); *Johnson v University Hosps of Cleveland,* 44 Ohio St 3d 49; 540 NE2d 1370 (1989); *Wofford v Davis,* 764 P2d 161 (Okla, 1988); *CS v Nielson,* 767 P2d 504 (Utah, 1988); *Johnston v Elkins,* 241 Kan 407; 736 P2d 935 (1987); *Smith v Gore,* 728 SW2d 738 (Tenn, 1987); *Morris v Sanchez,* 746 P2d 184 (Okla, 1987); *Cockrum v Baumgartner,* 95 Ill 2d 193; 69 Ill Dec 168; 447 NE2d 385 (1983).

Other jurisdictions have permitted the recovery of such damages. See, e.g., *Lovelace Medical Center v Mendez,* 111 NM 336; 805 P2d 603 (1991); *Burke v Rivo,* 406 Mass 764; 551 NE2d 1 (1990); *Marciniak v Lundborg,* 153 Wis 2d 59; 450 NW2d 243 (1990); *University of Arizona Health Sciences Center v Superior Court of Arizona,* 136 Ariz 579; 667 P2d 1294 (1983). Some jurisdictions permitting recovery allow full recovery, while others, such as this Court in *Troppi,* have applied the benefits rule, permitting the jury to offset the benefits of the child against the cost of rearing the child. The benefits rule has, in our opinion, been rightly criticized as unworkable and undesirable. *Girdley, supra.*

As recognized by this Court on previous occasions, the subjects of reproduction, contraception, and the decision to avoid or terminate pregnancy

are highly personal subjects fraught with controversy. It is therefore understandable that a conflict has arisen in decisions from this Court, as well as in other jurisdictions, with respect to whether parents may recover the customary cost of raising a child where, although the parents attempt to avoid pregnancy, conception and the birth of a child occurs as a result of the negligence of a doctor or other responsible person. We hold, however, that such recovery should not be available in Michigan.

We recognize that the cost of raising a child to majority is significant and may, in certain circumstances, impose a hardship upon the child's parents. We further recognize, however, that all human life is presumptively valuable. Simply stated, a child should not be considered a "harm" to its parents so as to allow recovery for the customary cost of raising the child. Our Supreme Court has held in the context of wrongful death actions that the benefits of the services of a minor child to the child's parents are at least as great as the cost of raising the child to majority. *Rohm v Stroud,* 386 Mich 693, 696; 194 NW2d 307 (1972).[3] See also *Rinard, supra,* 292. Similarly, in the context of a wrongful pregnancy action, we hold as a matter of law that the value of the life of a child will always outweigh the customary cost of raising that child to majority. The benefits rule is therefore inapplicable in a wrongful pregnancy action.

We also note that the courts of this state should not be the forum of the unbecoming spectacle of parents, in an effort to maximize recovery, presenting evidence of how little affection they have for their children or disparaging the value of their children. See *Rinard, supra,* 293. We therefore

---

[3] This holding would seem to undermine the basic premise in *Troppi,* which relies upon the benefits rule.

hold that in the context of a wrongful pregnancy action, a plaintiff may not recover the customary cost of raising and educating the child.

Affirmed.