DUNN v DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE

Docket No. 230793. Submitted September 5, 2002, at Detroit. Decided December 3, 2002, at 9:25 A.M. Leave to appeal sought.

Bradley Dunn was injured in an automobile accident and his medical expenses were paid by his employer's health plan, which was governed by the Employee Retirement Income Security Act (ERISA), 29 USC 1002(1) *et seq.* After Dunn obtained a monetary recovery in an action against a third party for noneconomic damages related to the accident, the health plan successfully sued Dunn for reimbursement pursuant to a provision of the health plan that required reimbursement from any third-party recovery. Dunn brought an action against Detroit Automobile Inter-Insurance Exchange, his no-fault insurer under a policy that provided for coordinated medical coverage, seeking reimbursement for the repayment he made to the health plan. The court, Wendy L. Potts, J., granted summary disposition for the plaintiff, ruling that the defendant is required to reimburse the plaintiff pursuant to *Yerkovich v AAA*, 231 Mich App 54 (1998), rev'd on other grounds 461 Mich 732 (2000), in which a majority of the Court of Appeals panel held that a no-fault insurer was required to reimburse an insured for sums paid by the insured to an ERISA plan. The defendant appealed.

The Court of Appeals *held*:

1. The Court of Appeals decision in *Yerkovich* is not binding. Where the Supreme Court reverses a Court of Appeals decision on one issue and does not specifically address a second issue in the case, no rule of law remains from the Court of Appeals decision.

2. A fundamental rule of insurance jurisprudence in Michigan is that an insurer should not be held liable for a risk it did not assume and for which it did not charge or receive a premium. The plaintiff invoked a right under the no-fault act, MCL 500.3101 *et seq.*, to a reduced no-fault insurance premium in exchange for coordinated benefits and opted to use as his primary medical insurance an ERISA plan that reserved and invoked subrogation rights against an eventual tort recovery. Requiring the defendant to reimburse the plaintiff would effectively give the plaintiff coverage for a risk that the defendant did not assume and for which it did not receive a premium.

Reversed and remanded for further proceedings.

FITZGERALD, P.J., dissenting, would affirm the trial court's decision. To the extent that the plaintiff reimbursed the health plan, the health plan benefits went unpaid and cannot be considered paid by an alternative source under the coordination of benefits clause of the defendant's no-fault insurance policy. Nor should the defendant be able to indirectly coordinate medical benefit payments against the plaintiff's tort recovery for noneconomic loss inasmuch as subsection 3116(4) of the no-fault act, MCL 500.3116(4), bars subtraction or reimbursement from a recovery realized for noneconomic loss.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — COORDINATED MEDICAL BENEFITS — ERISA PLANS — THIRD-PARTY TORT RECOVERY.

A no-fault insured who elects coordinated coverage for medical benefits and whose employer-provided Employee Retirement Income Security Act health plan reserves and invokes subrogation rights against an eventual tort recovery by the insured from a third party may not seek reimbursement by the no-fault insurer for amounts repaid by the insured to the health plan pursuant to the health plan's subrogation rights (MCL 500.3101 *et seq.*; 29 USC 1002[1] *et seq.*).

*Barbara H. Goldman* and *Richard E. Shaw* for the plaintiff.

*Schoolmaster, Hom, Killeen, Siefer & Arene* (by *Elaine I. Harding*) (*John A. Lydick*, of counsel) for the defendant.

Before: FITZGERALD, P.J., and BANDSTRA and GAGE, JJ.

GAGE, J. Defendant Detroit Automobile Inter-Insurance Exchange (DAIIE), appeals as of right the lower court's order granting plaintiff Bradley Dunn summary disposition in this no-fault automobile insurance benefits action. We reverse and remand.

The facts in this case are largely undisputed. Plaintiff was injured in an automobile accident in April 1997. Plaintiff's primary health insurance provider, Rockwell International Corporation Employee Health

Plan (Rockwell), provided personal injury benefits, in the amount of $96,152.65, to cover plaintiff's medical expenses.[1] At the time of the accident, plaintiff also had a no-fault insurance policy with defendant, which provided for the coordination of benefits (COB). Specifically, the COB clause provided:

> If the Declaration Certificate shows "COORDINATED MEDICAL BENEFITS," it is agreed that all other medical insurance or health care benefit plans available to *you* or *a resident relative* are your primary source of protection. *We* will pay benefits for all reasonable charges incurred for reasonably necessary products, services (including chiropractic services) and accommodations for the care, recovery or rehabilitation of you or a resident relative, except to the extent that (1) benefits are paid or payable under *your* primary protection; . . . .

In October 1997, plaintiff initiated a third-party lawsuit for noneconomic damages resulting from the accident. The parties settled this suit for an undisclosed amount. Plaintiff's policy with Rockwell contained a provision that required plaintiff to reimburse Rockwell from any third-party recovery for any sums expended on plaintiff's behalf for the accident. Therefore, when plaintiff failed to reimburse Rockwell, Rockwell initiated suit in federal court (*Rockwell v DAIIE*, 1999 US Dist LEXIS 20284 [WD Mich, 1999]). The district court concluded that Rockwell was entitled to reimbursement from plaintiff. *Rockwell, supra.* In December 1999, plaintiff filed the instant action

---

[1] Rockwell is a self-funded group health plan organized and governed by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1002(1) *et seq.* Plaintiff was a covered dependent under the policy.

seeking reimbursement from DAIIE for the $96,152.65 that plaintiff paid to Rockwell.

In April 2000, plaintiff filed a motion for summary disposition, arguing that defendant was contractually bound for any and all benefits that were not paid or were not payable from any other source. Plaintiff argued that the requirement that he reimburse Rockwell for the $96,152.65 effectively forced him to pay his own medical expenses in contradiction to the no-fault act. Plaintiff also argued that under *stare decisis*, the trial court was bound by this Court's decision in *Yerkovich v AAA*, 231 Mich App 54; 585 NW2d 318 (1998), rev'd on other grounds 461 Mich 732 (2000), which held that a no-fault insurer was required to reimburse an insured for sums paid by the insured to an ERISA plan.

In response, relying on the dissent in *Yerkovich*, defendant argued that the plain language of DAIIE's coordination of benefits provision provided that plaintiff's voluntary election to have Rockwell listed as his primary insurer entitled him to receive a reduced premium, and thus, plaintiff should not be allowed to reap the benefits of a reduced premium, while obligating defendant to reimburse plaintiff for sums paid to his primary insurer. Defendant argued that while the no-fault act was concerned with the guaranteed recovery by a motor vehicle accident victim of economic losses, it was not "so concerned" about recovering in tort for noneconomic losses because that is the trade-off of the no-fault system. Further, defendant argued that plaintiff did not lose any benefits under the no-fault policy; rather, plaintiff only lost a portion of his third-party tort recovery, which would not have occurred had there been no tort recovery.

Finally, defendant argued that plaintiff's reliance on *Yerkovich* was misplaced because the Supreme Court reversed *Yerkovich* on other grounds, and thus, *Yerkovich* had no precedential value.

The trial court held that defendant was required to pay plaintiff $96,152.65, the amount plaintiff reimbursed to Rockwell. The trial court concluded that when the Supreme Court reversed *Yerkovich*, it never addressed the no-fault insurer's obligation to reimburse an insured for sums paid to an ERISA fund from a third-party tort recovery, and noted that the Supreme Court specifically declined to address the issue. In ruling in favor of plaintiff, the trial court noted that it agreed with Judge, now Justice, MARKMAN's dissent because the effect of the majority's opinion in *Yerkovich* subjected defendant to a risk that it did not assume because plaintiff's choice to pursue coordinated benefits in exchange for a discounted premium. However, the trial court found that it was bound by this Court's decision in *Yerkovich*.

Because the facts in this case are largely undisputed, we are faced with two issues: (1) whether the trial court was bound to follow this Court's majority opinion in *Yerkovich*, and (2) if the trial court was not bound by the decision, whether *Yerkovich* was correctly decided—i.e., whether defendant must refund to plaintiff the reimbursement to plaintiff's health insurance provider.

I

MCR 7.215(I)(1) (formerly MCR 7.215[H][1]), provides that this Court must follow the rule of law established by a prior published decision of the Court

issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court or a special conflict panel of this Court. The interpretation of a court rule, like a matter of statutory interpretation, is a question of law that this Court reviews de novo. *Cam Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002).

This Court recently interpreted the court rule in *Taylor v Kurapati*, 236 Mich App 315; 600 NW2d 670 (1999). In *Taylor*, this Court held that where a decision of this Court is reversed, even if on other grounds that were decisive of the entire case, this Court is not required to follow the decision. For an understanding of the application of MCR 7.215(I)(1) to *Taylor*, we will briefly outline the facts of the case.

In *Taylor*, this Court addressed whether, absent legislative action, the tort of wrongful birth had a rightful place in Michigan jurisprudence. *Taylor, supra* at 319. In a detailed opinion, this Court addressed the question whether it was proper to allow a plaintiff to receive, as an element of damages, the costs of raising a child in a wrongful birth action. *Id.* at 325. In addressing the issue, this Court discussed the birth-related torts of wrongful conception and wrongful life. This Court noted that the torts of wrongful conception and wrongful life were closely similar to the birth-related tort of wrongful birth. *Id.* at 342. Accordingly, this Court addressed two post-November 1, 1990, Court of Appeals decisions that involved wrongful birth claims—*Rouse v Wesley*, 196 Mich App 624, 627; 494 NW2d 7 (1992), and *Blair v Hutzel Hosp*, 217 Mich App 502; 552 NW2d 507 (1996), rev'd on other grounds 456 Mich 877 (1997). In discussing these decisions, this Court recognized that under MCR

7.215(I), "unless one can distinguish these two cases or unless they have been later reversed or modified, [this Court] must apply [*Rouse* and *Blair*]." With regard to the present issue, this Court found that it was not bound by the *Blair* decision because the Supreme Court reversed *Blair* entirely, and, thus, this Court was free to address the viability of wrongful birth claims. Specifically with regard to this issue, this Court stated, "[b]ecause the Supreme Court entirely reversed the *Blair* panel's decision, we conclude that under the plain language of MCR 7.215(H)(1), nothing in the *Blair* panel's opinion is binding precedent under that subrule. We observe that MCR 7.215(H)(1) establishes a bright-line test and that such a test cannot be maintained if every opinion is to be parsed into its smallest components." *Taylor, supra* at 346, n 42.

Under *Taylor*, a prior Court of Appeals decision that has been reversed on other grounds has no precedential value. See also *People v Crear*, 242 Mich App 158, 165; 618 NW2d 91 (2000). However, our Supreme Court has also addressed this issue. In *Horace v City of Pontiac*, 456 Mich 744, 754-755; 575 NW2d 762 (1998), our Supreme Court held that where the Supreme Court reverses a Court of Appeals decision on one issue and does not specifically address a second issue in the case, no rule of law remains from the Court of Appeals decision.

*Horace* involved a slip and fall action. On appeal, this Court remanded the case to the trial court for reconsideration in light of the recent decision in *Maurer v Oakland Co Parks & Recreation Dep't (On Remand)*, 201 Mich App 223; 506 NW2d 261 (1993), rev'd 449 Mich 606; 537 NW2d 185 (1995). However,

the Supreme Court granted leave to appeal because fourteen days before this Court's decision, the Supreme Court had reversed *Maurer*. In *Maurer*, this Court held that the plaintiff's claim was not barred by the open and obvious danger doctrine and that the claim came within the public building exception. *Horace, supra* at 754. The Supreme Court reversed, finding that the claim was barred by the open and obvious danger doctrine, and thus, it did not specifically address the governmental immunity issue. *Id.* The *Horace* Court found that under the circumstances, no rule of law remained from the Court of Appeals *Maurer* decision because any statement made by the Court of Appeals regarding the building exception became no more than dictum once the Supreme Court reversed under the open and obvious danger doctrine. *Id.* The Court concluded that whether the area where the fall occurred came within the building exception became irrelevant once the Court found the claim barred by the open and obvious danger doctrine. *Id.* at 755.

We note this Court's decision in *Michigan Millers Mut Ins Co v Bronson Plating Co*, 197 Mich App 482, 490-491; 496 NW2d 373 (1992). In that case, this Court rejected, while giving little analysis, an argument made by the defendant that the trial court erred when it followed a Court of Appeals decision that had been reversed on other grounds. In rejecting the argument that the decision lost its precedential value, this Court noted that when the Supreme Court reversed, it did not address the merits of the Court of Appeals holding. This Court reasoned that, " '[j]ust as the discovery of one rotten apple in a bushel is no reason to throw out the bushel, one overruled proposition in a

case is no reason to ignore all the other holdings appearing in that decision.' " *Id.* at 490-491, quoting *Rouch v Enquirer & News of Battle Creek, Michigan,* 137 Mich App 39, 54, n 10; 357 NW2d 794 (1984).

In *Michigan Millers,* this Court specifically found that the Supreme Court had expressly declined to review the issue that was before the Court of Appeals and reversed the decision on other grounds. This Court found that because the Supreme Court *explicitly* declined to review the issue that had been before the Court of Appeals, the entire decision was not without precedential value. *Id.* at 490. However, we note that this Court alternatively held that even if the reversed decision was without precedential value, because the Supreme Court had not addressed the exact issue in any other case, this Court could find the decision persuasive. Thus, this Court found the decision persuasive and held that it would follow the decision. *Id.* at 491.

In *Yerkovich,* an injured plaintiff brought suit against her employer ERISA plan (fund) and her auto insurance company, with whom the plaintiff had a no-fault insurance policy, for payment of medical expenses for injuries the plaintiff's daughter sustained in an automobile accident. *Yerkovich, supra* 231 Mich App at 58. The administrator of the self-funded employer ERISA plan paid the medical expenses after the plaintiff executed a "subrogation and assignment" form, which was required by the policy's subrogation clause. *Id.* The plaintiff also received a settlement in a third-party tort action. *Id.* Both the fund and the plaintiff filed motions for summary disposition. The trial court granted the motions for summary disposition and ordered the no-fault insurance provider to

repay the plaintiff any sums that she paid to the fund. *Id.* at 59. On appeal, this Court reviewed the language of the subrogation and assignment agreement signed by the plaintiff and concluded that the plain language of the agreement required the plaintiff to reimburse the fund. *Id.* at 61-62. Additionally, this Court concluded that the plaintiff was entitled to reimbursement from the no-fault insurance provider because federal preemption barred the application of the no-fault act, MCL 500.3116, and the plaintiff was entitled to rely on her no-fault carrier to make her whole. *Id.* at 67-68.

On appeal to the Supreme Court, two issues were presented: "(1) whether the subrogation agreement between defendant fund and plaintiff Yerkovich entitled the fund to reimbursement from plaintiff for medical expenses and, if so, (2) whether plaintiff's no-fault insurer, defendant AAA, must refund plaintiff for that reimbursement." *Yerkovich v AAA*, 461 Mich 732, 734; 610 NW2d 542 (2000). The Court undertook a complete analysis of the subrogation clause contained in the ERISA policy between the plaintiff and the fund and found that under the clause, the plaintiff was not required to reimburse the fund. *Id.* at 740. The Court concluded that whether the second agreement signed by the plaintiff pursuant to the policy entitled the fund to reimbursement was irrelevant because the second agreement was void for lack of consideration and the fund was under a preexisting duty to pay for the plaintiff's medical expenses. *Id.* The Supreme Court stated that because it held that the fund was not entitled to reimbursement, "we do not reach the second question." *Id.*

*Taylor* and *Horace* govern the effect of *Yerkovich* on the case before us. The Supreme Court in *Yerkovich* was faced with issues that were also before the Court of Appeals. The Court of Appeals found that on the basis of the subrogation agreement signed by the plaintiff, the fund was entitled to reimbursement from the plaintiff and decided that the defendant AAA had to reimburse the plaintiff. However, the Supreme Court held that, contrary to the rulings of both the trial court and the Court of Appeals, the specific language of the ERISA policy was such that plaintiff was not required to reimburse the ERISA plan from the plaintiff's tort recovery, and the subsequent, signed agreement was void. This, in effect, mooted any further question regarding whether the plaintiff's no-fault insurer would, in turn, be liable for the reimbursement. Therefore, in reversing on a dispositive issue, the Supreme Court entirely reversed the Court of Appeals and rendered any discussion by the Court of Appeals to be without precedential value. Thus, we find that because the Supreme Court *completely* reversed this Court's decision in *Yerkovich*, the decision in *Yerkovich* is not precedentially binding. The finding that the first issue in the case was controlling rendered this Court's discussion of the second issue irrelevant. See *Horace*, *supra*. Therefore, we conclude that the trial court erred in finding that it was bound by this Court's majority decision in *Yerkovich*.

II

Although we find that *Yerkovich* is not precedentially binding, it can be persuasive authority. In its opinion on the motion for summary disposition in this case, the trial court noted that it agreed with the dis-

senting Court of Appeals opinion in *Yerkovich* that the ruling by the majority subjected the defendant to a risk it did not assume.

In this Court's decision in *Yerkovich*, which both parties agree occurred under similar circumstances to the instant case, the majority concluded that the plaintiff should be reimbursed by her no-fault insurance carrier. We respectfully disagree with that conclusion. Plaintiff elected to purchase coordinated no-fault benefits in exchange for a reduced premium; therefore, plaintiff is not entitled to reimbursement from the insurer.

A no-fault insurer cannot seek reimbursement for medical benefits paid from an insured's third-party tort recovery except under the limited circumstances set forth in § 3116 of the no-fault act, MCL 500.31116. *Great Lakes American Life Ins Co v Citizens Ins Co*, 191 Mich App 589, 596-597; 479 NW2d 20 (1991). Subsection 3116(4) expressly bars "subtraction or reimbursement" from a recovery "realized for noneconomic loss." *Id.*

In *Sibley v DAIIE*, 431 Mich 164; 427 NW2d 528 (1988), our Supreme Court found that worker's compensation benefits received by a plaintiff, which were later required to be reimbursed from the proceeds of a tort settlement, were not government-provided benefits subject to coordination under subsection 3109(1) of the no-fault act, MCL 500.3109(1). In *Sibley, supra* at 170, the Court explained:

> We are persuaded that when the automobile no-fault act speaks of benefits "provided," it means benefits permanently provided. To the extent that benefits paid are retrieved by the alternative source provider out of the worker's tort recovery, they at that point cease to be "bene-

fits provided" within the meaning of § 3109(1) relieving the automobile no-fault insurer of liability to the extent of "benefits provided" by alternative sources pursuant to state or federal law.

Because plaintiff was ultimately required to refund the FECA benefits he had received, he was left without that compensation for his medical services and lost wages. Therefore, his only recourse for economic damages was to seek payment from his no-fault carrier. Because, in fact, only single recovery was available to plaintiff, there was no duplicative recovery.

This Court's majority in *Yerkovich*, relying in part on *Sibley*, held that where an ERISA-type plan is entitled to reimbursement of medical benefits paid from a tort settlement, the insured's no-fault insurer is responsible for the payment of those medical benefits. Citing *Great Lakes, supra*, the Court found that it was "appropriate to use the approach set forth in *Sibley* and allow the plaintiff to look to her no-fault carrier to make her whole." *Yerkovich, supra* at 68.

As the parties note, the situation presented in the present case is very similar to that in *Yerkovich*. Here, we are faced with a plaintiff who purchased coordinated no-fault insurance benefits in exchange for a reduced premium. His primary health insurance plan required reimbursement for any third-party recovery.[2] Plaintiff pocketed savings by electing to coordinate benefits, but now seeks to hold his no-fault insurer to providing coverage exactly equivalent to what would have been appropriate had it not received a reduced premium. We find it illogical to hold the insurer liable for a risk it did not assume; therefore, we adopt Judge MARKMAN's dissent in *Yerkovich* stating:

---

[2] The parties do not dispute this fact.

Section 3109a of the Insurance Code, MCL 500.3109a; MSA 24.13109(1), provides:

"An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household."

Before the advent of statutory no-fault insurance in Michigan, persons injured in motor vehicle accidents bore the resulting financial burdens if negligent or contributorily negligent, or if no one else involved in the accident was negligent. By mandating first-party insurance without regard to fault, the no-fault system changed all of this, guaranteeing that injured motorists, passengers, and pedestrians alike will have their medical costs and some or all of their wage losses and incidental expenses covered by required insurance or through the assigned claims facility, MCL 500.3172 *et seq.*; MSA 24.13172 *et seq.*

Within this scheme of mandatory first-party insurance, the Legislature, in order to help make the required insurance affordable, added § 3109a within two years of enacting the original no-fault act. This section requires no-fault insurers to offer their insureds the option of coordinated benefits at a reduced premium. *O'Donnell v State Farm Mut Automobile Ins Co*, 404 Mich 524; 273 NW2d 829 (1979), app dis 444 US 803; 100 S Ct 22; 62 L Ed 2d 16 (1979); *Smith v Physicians Health Plan, Inc*, 444 Mich 743; 514 NW2d 150 (1994). Fundamental to this statutory amendment is that insurers have no choice—they must offer such an option to their insureds. The insureds then have the right to elect coordinated medical benefits in exchange for a reduced no-fault insurance premium, or to reject that opportunity for such savings and, in the event of subsequent injury, to recoup a double recovery that is not a "windfall." *Tousignant v Allstate Ins Co*, 444 Mich 301; 506 NW2d 844 (1993).

Perhaps the most fundamental rule of Michigan insurance jurisprudence is that an insurer can never be held liable for a risk it did not assume and for which it did not charge or receive any premium. *Ruddock v Detroit Life Ins Co*, 209 Mich 638, 653; 117 NW 242 (1920); *Lee v Evergreen Regency Cooperative*, 151 Mich App 281, 285-286; 390 NW2d 183 (1986); *South Macomb Disposal Auth v American Ins Co (On Remand)*, 225 Mich App 635, 695-696; 572 NW2d 686 (1997). . . .

In this case, plaintiff pocketed the savings generated by electing to coordinate her employer-sponsored health and accident benefits with her no-fault insurance, thereby reducing her no-fault insurance premiums. Yet although she reduced her premiums in this way, she appears to have given up nothing in reality because the liability of the no-fault insurer is apparently unaffected by the reduced premiums under the analysis of the majority. The insurer here is held to have provided coverage exactly equivalent to what would have been appropriate had it not received a reduced premium. . . .

*        *        *

. . . In *Sibley* [*supra*] the issue was whether benefits initially tendered to the insured under the Federal Employees' Compensation Act, 5 USC 8101 *et seq.*, but recouped by the federal government pursuant to its statutory right of subrogation, 5 USC 8132, from the insured's third-party tort claim, should nonetheless be treated as "[b]enefits provided or required to be provided under the laws of . . . the federal government" for purposes of MCL 500.3109(1); MSA 24.13109(1). The Supreme Court of Michigan answered that question in the negative, and correctly so, in my judgment. What distinguishes *Sibley* from the present case, however, is that, in *Sibley*, the insured did not arrange a lower premium on the basis of such federal benefits; rather, insureds generally receive the benefit of lower premiums because the no-fault statute requires that state and federal benefits of that type be deducted from no-fault benefits. Insurers thus calculate actuarially the extent to which the general population of insureds will be able to avail itself of such

benefits, and premiums are determined accordingly, without regard to individual cases. Thus, in *Sibley,* the Court merely announced to the actuaries that they should consider only benefits to be paid and retained under such federal and state programs as being within the offset allowed.

Here, in contrast, the ERISA-plan benefits are not provided "under the laws of any state or the federal government," that is, from the public treasury, but rather by virtue of funding furnished by plaintiff's employer. . . .

This is not a dispute over priority as between the ERISA plan and the no-fault insurer; as has been acknowledged, in that situation the ERISA plan would prevail, assuming a suitable coordination of benefits clause in the plan's charter. [*Auto Club Ins Ass'n v Frederick & Herrud, Inc (After Remand),* 443 Mich 358, 387; 505 NW2d 820 (1993).] Nor is this a case in which a non-ERISA health insurer seeks to enforce subrogation rights against a tort recovery; that is precluded by § 3116 of the Insurance Code, MCL 500.3116; MSA 24.13116. *Great Lakes American Life Ins Co [supra].* This is the only holding in *Great Lakes*; there is nothing therein, even dictum, that addresses the present factual situation or suggests a resolution of the issue here presented. This is a suit by an insured who has invoked her statutory right to a reduced premium in exchange for coordinated benefits, and who opted to use as her primary medical insurance an ERISA plan that reserved and invoked subrogation rights against an eventual tort recovery. No one forced her to make that election, but now that it has come time to accept the consequences of that election, there is no reason in law or logic to relieve her of the concomitant burdens that attend the reduced premium benefits already enjoyed. [*Yerkovich, supra* at 68-75.]

In adopting the above, we adhere to Michigan's most fundamental insurance jurisprudence rule—an insurer can never be held liable for a risk it did not assume and for which it did not charge or receive a premium. In this case, plaintiff pocketed savings by electing to coordinate the employer-sponsored health

benefits with the no-fault insurance. Although he reduced his premiums, he would have given up nothing if his no-fault insurer were forced to reimburse him. Accordingly, we find defendant is not required to reimburse plaintiff for the amount he paid to Rockwell; therefore, defendant is entitled to summary disposition.

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

BANDSTRA, J., concurred.

FITZGERALD, P.J. (*dissenting*). I respectfully dissent from the majority's conclusion that the trial court erred by ordering defendant no-fault insurer to pay plaintiff the amount plaintiff was required to reimburse the employer-funded ERISA plan for medical benefits paid for injuries caused by the April 1997 car accident.

Even though our Supreme Court reversed this Court's opinion in *Yerkovich v AAA*, 231 Mich App 54; 585 NW2d 318 (1998), without specifically addressing the issue relevant to this appeal, this Court's analysis in *Yerkovich* is not binding precedent under MCR 7.215(I)(1). *Taylor v Kurapati*, 236 Mich App 315, 345-346, n 42; 600 NW2d 670 (1999). However, the relevant analysis in *Yerkovich* has not been overruled. While not binding, *Yerkovich* remains valid persuasive authority on the issue. I would conclude that the trial court did not err by ordering that defendant no-fault insurer pay plaintiff the amount he was required to reimburse the employer-funded ERISA plan for medical benefits paid for injuries caused by the April 1997 car accident.

A no-fault insurer cannot seek reimbursement for medical benefits paid from an insured's third-party tort recovery except under the limited circumstances set forth in § 3116 of the no-fault act, MCL 500.3116. *Great Lakes American Life Ins Co v Citizens Ins Co,* 191 Mich App 589, 596-597; 479 NW2d 20 (1991). Subsection 3116(4) expressly bars "subtraction or reimbursement" from a recovery "realized for noneconomic loss." *Id.*

In *Sibley v DAIIE,* 431 Mich 164; 427 NW2d 528 (1988), our Supreme Court found that worker's compensation benefits a plaintiff received, which were later required to be reimbursed from the proceeds of a tort settlement, were not government-provided benefits subject to coordination under subsection 3109(1) of the no-fault act, MCL 500.3109(1). In *Sibley,* the Court explained:

> We are persuaded that when the automobile no-fault act speaks of benefits "provided," it means benefits permanently provided. *To the extent that benefits are retrieved by the alternative source provider out of the worker's tort recovery, they at that point cease to be "benefits provided" within the meaning of § 3019(1) relieving the automobile no-fault insurer of liability to the extent of "benefits provided" by alternative sources* pursuant to state or federal law.
>
> Because plaintiff was ultimately required to refund the FECA benefits he had received, he was left without that compensation for his medical services and lost wages. Therefore, his only recourse for economic damages was to seek payment from his no-fault carrier. Because, in fact, only single recovery was available to plaintiff, there was no duplicative recovery. [*Id.* at 170-171 (emphasis added).]

In *Yerkovich, supra* at 63-68, this Court held that where an ERISA-type plan is entitled to reimbursement

of medical benefits paid from a tort settlement, the insured's no-fault insurer is responsible for the payment of those medical benefits. Citing *Great Lakes*, the Court found that it was "appropriate to use the approach set forth in *Sibley* and allow the plaintiff to look to her no-fault carrier to make her whole." *Yerkovich, supra* at 68.

There is no dispute that plaintiff sued a third-party tortfeasor for noneconomic damages arising from his April 1997 car accident and received a monetary settlement in that case. The health plan, which paid $96,152.65 in medical benefits for plaintiff's injuries arising from that accident, sought and obtained reimbursement for its payments out of the settlement funds. Plaintiff had to pay his health insurer out of his recovery for noneconomic damages and so has effectively paid his own medical expenses. Under *Sibley*, to the extent that plaintiff reimbursed the employer plan for those medical benefits, those benefits went unpaid and cannot be considered paid by an alternative source or provider under the coordination of benefits clause contained in defendant's no-fault policy. Defendant no-fault insurer has no contractual right to "coordinate" against benefit payments that were effectively revoked by the primary insurer and paid by the insured. Nor should defendant be able to indirectly coordinate medical benefit payments against plaintiff's tort recovery for noneconomic loss. MCL 500.3116(4); *Great Lakes, supra*.

I would affirm.