IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 10, 2007 Session

# DANIEL LEON FRAIRE ET AL. v. TITAN INSURANCE COMPANY ET AL.

**Appeal from the Circuit Court for Hickman County**
**No. 04-5003C      Jeffrey Bivins, Judge**

---

**No. M2006-02515-COA-R3-CV - Filed June 29, 2009**

---

The issue on appeal is whether Titan Insurance Company, which issued a "no-fault" automobile insurance policy to a Michigan resident, is entitled to be reimbursed for "personal protection insurance benefits" paid to its insureds for injuries sustained in a vehicular accident in Tennessee. After the insureds entered into a substantial settlement agreement with the tortfeasors in this civil action, which compensated them in addition to the benefits paid by Titan under the no-fault policy, Titan intervened seeking reimbursement of the benefits it paid. Titan contended that it was entitled, pursuant to Michigan's No-Fault Insurance Act to reimbursement of the benefits remitted.  The insureds, relying on the "made whole doctrine," contended they had not been made whole by the settlement with the tortfeasor; therefore, Titan was not entitled to reimbursement.  The trial court held that the made whole doctrine applied and that the insureds had not been made whole by the settlement; therefore, Titan was not entitled to reimbursement in any amount.  Under  Michigan's No-Fault Insurance Act, specifically Mich. Comp. Laws § 500.3116(2), (4), the right of the no-fault insurer to reimbursement of "economic" benefits paid for the benefit of its insureds is not dependent upon whether its insureds have been made whole by a settlement with the tortfeasor.  Therefore, Titan's right to reimbursement of economic benefits paid is not dependent on whether its insureds were "made whole." Accordingly, the judgment of the trial court is reversed, and we remand with instructions for the trial court to determine the extent to which Titan is entitled to be reimbursed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court,[1] in which PATRICIA J. COTTRELL, P.J., M.S., and TOM E. GRAY, SP. J., joined.

Marianna Williams, Dyersburg, Tennessee, for the appellant, Titan Insurance Company.

Brian Dunigan, Goodlettsville, Tennessee, for the appellees, Daniel Leon Fraire, Luis Gabriel Leon Fraire and James M. Rios.

---

[1]This case came on for oral argument on September 10, 2007. The responsibility to author the majority opinion was re-assigned to the author of this opinion on June 1, 2009.

**OPINION**

The plaintiffs, James Rios and Daniel Fraire, who are Michigan residents, were involved in a serious vehicular accident that occurred in Hickman County, Tennessee on July 16, 2003. The accident occurred when a tractor trailer truck owned and operated by MCH Transportation Company struck the plaintiffs' vehicle. The plaintiffs sustained severe injuries and permanent impairment as a result of the accident.[2]

The vehicle in which the plaintiffs were riding was owned by plaintiff James Rios. Mr. Rios was insured pursuant to an automobile insurance policy issued by the Titan Insurance Company ("Titan"). The Titan policy was issued in compliance with Michigan's "no-fault" insurance law because of Mr. Rios' Michigan residency. Pursuant to the no-fault insurance policy and Michigan's No-Fault Insurance Act, Mich. Comp. Laws § 500.3101 *et seq.,* Titan paid benefits of approximately $328,000[3] to cover the plaintiffs' medical expenses and related expenses afforded by the policy.

On July 24, 2004, the plaintiffs filed this action in the Circuit Court for Hickman County, Tennessee against MCH Transportation Company, the owner and operator of the vehicle, and its employee who was driving the truck (hereinafter collectively "MCH"). In 2006, the plaintiffs settled their personal injury claims against MCH for a total of $968,283.22, of which $484,141.61 was paid to Daniel Leon Fraire and $484,141.61 was paid to James Rios.[4]

As part of the settlement, the plaintiffs signed full releases of all of their claims against MCH and its insurer. One of the provisions in the settlement agreement was a provision that the plaintiffs were solely responsible for satisfying any and all claims Titan may assert for reimbursement of medical expenses and other benefits paid by Titan to or for the plaintiffs' benefit as a result of the accident.

Immediately following the execution of the settlement agreement with the plaintiffs, MCH filed a Motion for Interpleader in the circuit court action in order to interplead Titan, deposit the settlement proceeds with the clerk of the court, and enjoin Titan, medical providers and other possible claimants from prosecuting any action against MCH, and to dismiss MCH from the action. Thereafter, Titan made a formal appearance through its counsel and stated that it did not oppose the Motion for Interpleader. The trial court then granted MCH's motion in all respects.[5]

---

[2] A third individual, Luis Gabriel Fraire, was also in the vehicle. He, too, was injured but is not a party in this appeal. He received $24,827.78 in settlement of his personal injury claim.

[3] Titan remitted benefits of $155,963.47 on behalf of Mr. Rios and $162,496.05 on behalf of Mr. Fraire.

[4] The total settlement was for policy limits of $1,000,000, of which $6,890 was paid to James Rios for property damage to his vehicle, $24,827.78 was paid to Luis Gabriel Fraire for his injuries, and the balance of $968,283.22 was paid in equal amounts of $484,141.61 to the plaintiffs, Daniel Fraire and James Rios.

[5] As a consequence, MCH was dismissed; leaving only the plaintiffs and Titan as the parties to this action.

After Titan became a party to this action, the plaintiffs filed a Motion to determine the extent of Titan's claim. The motion was accompanied by a memorandum of law in which the plaintiffs asserted that Titan was not entitled to reimbursement because the plaintiffs had not been "made whole" by the settlement with MCH. Titan responded to the motion insisting that the made whole doctrine did not apply under Michigan law. The parties agreed that Michigan law was applicable as the automobile insurance policy was subject to Michigan law and the benefits were paid pursuant to Michigan's no-fault insurance statute.

The trial court conducted a hearing on the motion to determine two issues: whether the insureds were fully compensated by the settlement proceeds, and whether the "made whole" rule applies to Titan's right of reimbursement under the Michigan No-Fault Insurance Act. On October 26, 2006, the trial court issued its order finding that the "made whole" doctrine did apply under Michigan law, that the statutory right to reimbursement did not abrogate this doctrine, and that the reimbursement statute of Michigan must be read in conjunction with the made whole doctrine. The trial court then determined, based upon the testimony of medical experts, medical records, and exhibits regarding the Appellees' injuries, that the amount of the settlement was not sufficient to fully compensate the plaintiffs for their serious injuries, and, therefore, that Titan was not entitled to reimbursement. Titan then filed this appeal from the order granting the plaintiffs summary judgment on the issue of reimbursement.

### SUMMARY JUDGMENT - QUESTION OF LAW

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997).

No genuine material factual disputes are presented. The issue presented hinges on the proper interpretation of a statute and the application of the law to the undisputed facts of this case. Issues involving the construction of statutes and their application to facts involve questions of law. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002); *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Waller v. Bryan*, 16 S.W.3d 770, 773 (Tenn. Ct. App. 1999). The standard of review for questions of law is the de novo standard. *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000). The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. Department of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Our duty is to seek a reasonable construction "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001), citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995). To determine legislative intent, we must look to the natural and ordinary meaning of the language in the statute. We must also examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *T.R. Mills Contractors, Inc. v. WRH*

*Enterprises, LLC*, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991).

## ANALYSIS

The dispositive issues in this appeal are controlled by Michigan law.[6] The principal issue on appeal is whether, under Michigan law, the "made whole doctrine" bars the claim of reimbursement by Titan Insurance Company.

The material and undisputed facts are that Mr. Rios was a Michigan resident when the Titan policy was issued, the policy was issued subject to Michigan's No-Fault Insurance Act, Mich. Comp. Laws § 500.3101 *et seq.,* both plaintiffs were insureds under the Titan policy as they were occupants of the insured vehicle, Titan paid personal protection insurance benefits for the benefit of both plaintiffs pursuant to the no-fault insurance policy, benefits paid by Titan total approximately $328,000, and the plaintiffs reached a settlement with the tortfeasor responsible for the plaintiffs' injuries whereby the plaintiffs are to be paid a total of $968,283.22 in compensation for their personal injuries and expenses.

## MICHIGAN'S NO-FAULT INSURANCE ACT

The Michigan No-Fault Insurance Act, which became law on October 1, 1973, was "an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system." *Shavers v. Attorney General*, 267 N.W.2d 72, 77 (Mich. 1978). "The goal of Michigan's no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Id*. In order to attain its goal, the Michigan Legislature created a compulsory insurance system, whereby every Michigan motorist was required to purchase no-fault insurance; otherwise, the motorist was not permitted to operate a motor vehicle in the state. *Id*. Under this "no-fault" system, "the victims of motor vehicle accidents would receive insurance benefits for their injuries as a *substitute for their common-law remedy in tort*." *Id*. (emphasis added).

The legislative intent of Michigan's statutory scheme was clear: to abolish the common law tort liability with limited exceptions and replace it with the no-fault system. *See Shavers*, 267 N.W.2d 77; *see also Kreiner v. Fischer*, 683 N.W.2d 611(Mich. 2004); *Michigan Educ. Emples. Mut. Ins. Co. v. Morris*, 596 N.W.2d 142 (Mich. 1999). Under Michigan's no-fault system, the

---

[6] All parties agree that Michigan law applies as the insurance contract was executed in the state of Michigan, Mr. Rios is a Michigan resident, and Titan is a Michigan insurance company. Under Tennessee's conflicts of law analysis, "[i]n the absence of an enforceable choice of law clause, Tennessee courts apply the substantive law of the state in which the policy was issued and delivered." *Standard Fire Ins. Co. v. Chester O'Donley & Assoc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973); *Kustoff v. Stuyvesant Ins. Co.*, 22 S.W.2d 356, 358 (Tenn.1929); *Hutchison v. Tennessee Farmers Mut. Ins. Co.*, 652 S.W.2d 904, 905 (Tenn. Ct. App. 1983)).

insured would promptly receive payments to cover the insured's "economic" expenses, which included medical expenses and lost wages, with no regard to fault. *See* Mich. Comp. Laws § 500.3107.

Section 500.3116 of the Michigan Compiled Laws sets forth the right of the insurance company to reimbursement of benefits paid to or for an insured following a recovery by the insured:

> (2) A subtraction from or *reimbursement for personal protection insurance benefits* paid or payable under this chapter *shall be made only if recovery is realized upon a tort claim arising from an accident occurring outside this state*, a tort claim brought within this state against the owner or operator of a motor vehicle with respect to which the security required by section 3101(3) and (4) was not in effect, or a tort claim brought within this state based on intentionally caused harm to persons or property, *and* shall be made *only to the extent that the recovery realized by the claimant is for damages for which the claimant has received or would otherwise be entitled to receive personal protection insurance benefits*. A subtraction shall be made only to the extent of the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. If personal protection insurance benefits have already been received, the claimant shall repay to the insurers out of the recovery a sum equal to the benefits received, but not more than the recovery exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. The insurer shall have a lien on the recovery to this extent. A recovery by an injured person or his or her estate for loss suffered by the person shall not be subtracted in calculating benefits due a dependent after the death and a recovery by a dependent for loss suffered by the dependent after the death shall not be subtracted in calculating benefits due the injured person.
> . . . .
>
> (4) A subtraction or *reimbursement shall not be due the claimant's insurer from that portion of any recovery to the extent that recovery is realized for noneconomic loss* as provided in section 3135(1) and (2)(b) or for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the amount recovered by the claimant from his or her insurer.

Mich. Comp. Laws § 500.3116(2), (4) (emphasis added).

Prior to 1978, the Michigan courts found the initial version of the Act "ambiguous." *Great Lakes American Life Insurance Co. v. Citizens Insurance Co.*, 479 N.W.2d 20, 23 (Mich. Ct. App. 1991) (stating the reimbursement provision "was arguably ambiguous regarding the extent to which an insurance carrier could seek reimbursement for personal protection insurance benefit payments from an insured's third-party tort recovery.") The ambiguity "was unequivocally resolved by a 1978 amendment of § 3116." *Id*. at 23. As the court explained:

It is now clear that *an insurance carrier responsible for no-fault benefits may realize reimbursement from an insured's third-party tort claim only in the following situations: (1) accidents occurring outside the state*, (2) actions against uninsured owners or operators, or (3) intentional torts. *Auto Club Ins Ass'n. v. Henley*, 130 Mich App 767, 770; 344 NW2d 363 (1983). *Furthermore, reimbursement from the insured's third-party tort action is prohibited for damages realized for noneconomic loss or [personal protection insurance] benefits in excess of the amounts defined in §§ 3107 to 3110.*

*Id*. at 23-24 (emphasis added).

Based on the foregoing explanation of the now unambiguous right of reimbursement under a Michigan no-fault insurance policy, we have concluded that the right to be reimbursed does not depend upon a determination that the insured was "made whole."[7] Accordingly, we reverse the trial court's holding that the "made whole doctrine" bars Titan's claim for reimbursement.

The foregoing notwithstanding, under Michigan law Titan is only entitled to recover that portion of the plaintiffs' recovery that was for their economic loss, as distinguished from their non-economic losses. *See Great Lakes American Life Ins. Co.*, 479 N.W.2d at 23–24; *see also Dunn v. Detroit Auto Inter-Ins. Exch.*, 657 N.W.2d 153, 158 (Mich. Ct. App. 2002). Because the plaintiffs' settlement agreement with MCH did not categorize the plaintiffs' losses as economic or non-economic, under the Michigan statutory scheme, the burden of proof is on Titan to prove the portion of the plaintiffs' recovery that was for economic loss.[8] *See Allstate Ins. Co. v. Jewell*, 452 N.W.2d 896, 899 (Mich. Ct. App. 1990).

---

[7] In making their argument that the "made whole" doctrine applies, the plaintiffs principally relied on two cases: *Washtenaw Mutual Fire Insurance Co. v. Budd*, 175 N.W. 231 (Mich. 1919), and *Union Ins. Soc'y of Canton v. Consol. Ice Co.*, 245 N.W. 563, 564 (Mich. 1932). We have determined that the plaintiffs' reliance on these opinions is misplaced because Michigan's no-fault statutory scheme was adopted in pertinent part after these cases were filed. Accordingly, we find the cases inapplicable to the issue at hand. We also find no merit to the plaintiffs' argument that the made whole doctrine was applied "as recently" as 1980 in the case of *Michigan Mutual Ins. Co. v. Shaheen*, 300 N.W.2d 599 (Mich. Ct. App. 1980). While the insured in *Shaheen* argued that public policy would require the "trust agreement be interpreted to entitle the insurer to be subrogated to the proceeds of any settlement only if the injured party has been fully compensated for his losses," the court never reached the issue of whether he had been fully compensated or whether there was double recovery. *Id*. at 602.

[8] Michigan law provides that the language within the settlement agreement is conclusive on whether the funds within the settlement were for economic or non-economic damages, and "[w]hen a settlement agreement fails to characterize the losses covered, a presumption applies that the compensation for the injured party was for noneconomic damages." *See Matthews v. Republic Western Ins. Co.*, No. 251333, 2006 WL 510512, at *4 (Mich. Ct. App. Mar. 2, 2006) (citing *Keys v. Travelers Ins. Co.*, 335 NW2d 100 (1983)). The plaintiffs' settlement agreement with MCH does not categorize the plaintiffs' losses as economic or non-economic.

## IN CONCLUSION

After a thorough review of the applicable Michigan law, we have concluded that Titan's claim for reimbursement is not barred or limited by the made whole doctrine, and that Titan is entitled to recover, up to the extent of personal protection insurance benefits paid by Titan to or for each plaintiff, that portion of each plaintiff's recovery that was compensation for the plaintiff's economic losses, as distinguished from non-economic losses. We have also determined that the record is insufficient for this court to determine the amount Titan is entitled to recover from each plaintiff. Therefore, we remand this issue to the trial court for such a determination and for the entry of a judgment in favor of Titan in the appropriate amounts.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion. Costs of appeal are assessed one-half against Titan Insurance Company and one-half against the plaintiffs, James Rios and Daniel Fraire.

_____
FRANK G. CLEMENT, JR., JUDGE