RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0196p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

STEFANIE SHIELDS,

　　　　　　　*Plaintiff-Appellee,*

　　　　*v.*

GOVERNMENT EMPLOYEES HOSPITAL ASSOCIATION, INC.,

　　　　　　　*Defendant-Appellee,*

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

　　　　　　　*Defendant-Appellant.*

No. 05-1037

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 03-00395—Wendell A. Miles, District Judge.

Argued: December 1, 2005

Decided and Filed: June 16, 2006

Before: CLAY and COOK, Circuit Judges; OLIVER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael M. Carey, HEWSON & VAN HELLEMONT, Warren, Michigan, for Appellant. Brent W. Boncher, SCHENK, BONCHER & RYPMA, Grand Rapids, Michigan, Scott R. Jamison, GORDON & ERMER, Washington, D.C., for Appellees. **ON BRIEF:** Michael M. Carey, HEWSON & VAN HELLEMONT, Warren, Michigan, for Appellant. Brent W. Boncher, Frederick J. Boncher, SCHENK, BONCHER & RYPMA, Grand Rapids, Michigan, Joseph P. VanderVeen, STRAIN, MURPHY & VANDERWAL, Grand Rapids, Michigan, for Appellees.

　　　CLAY, J., delivered the opinion of the court, in which OLIVER, D. J., joined. COOK, J. (p. 8), delivered a separate concurring opinion.

_____

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

---

## OPINION

---

CLAY, Circuit Judge.   Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), appeals a December 10, 2004 order of the United States District Court for the Western District of Michigan, granting summary judgment in favor of Plaintiff Stefanie Shields ("Shields") and holding that Shields' no fault automobile insurance policy with State Farm obligates State Farm to cover the cost of Shields' medical expenses resulting from injuries sustained in an automobile accident.   For the reasons set forth below, this Court **AFFIRMS** the order of the district court.

### I.
### BACKGROUND

#### A.     Procedural History

On June 19, 2003, Plaintiff Stefanie Shields filed a diversity of citizenship action for declaratory judgment in federal district court against her two insurance carriers, Defendants State Farm and Government Employees Hospital Association ("GEHA"), requesting that the district court clarify all parties' obligations under their respective insurance contracts, the Federal Employees Health Benefit Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, and the Michigan No-Fault Insurance Act ("MNFIA"), Mich. Comp. Laws § 500.3101 *et seq.*   Plaintiff filed an amended complaint on June 30, 2003.   Thereafter, all three parties filed motions for summary judgment.   On December 10, 2004, the district court: (1) granted Defendant GEHA's motion for summary judgment against Plaintiff; (2) denied Plaintiff's motion for summary judgment against GEHA; (3) granted Plaintiff's motion for summary judgment against Defendant State Farm; and (4) denied Defendant State Farm's motion for summary judgment against Plaintiff.   The district court's disposition of the summary judgment motions required Plaintiff Shields to reimburse GEHA for the cost of her medical expenses, and Defendant State Farm to reimburse Shields an incidental amount.

#### B.     Substantive History

The facts of this case are undisputed.   Plaintiff Stefanie Shields is covered by her mother's no-fault automobile insurance policy with Defendant State Farm, as well as under her mother's employment benefits plan with Defendant GEHA.   GEHA's benefit plan was drafted pursuant to FEHBA whereas the State Farm policy was drafted in accordance with the MNFIA.

On February 29, 2003, Plaintiff was injured in an automobile accident after a 70 pound piece of steel fell off the back of a truck and onto her car.   Plaintiff suffered extensive medical injuries, for which GEHA initially paid.   Plaintiff estimates that GEHA paid over $160,000 in medical expenses.

Thereafter, Plaintiff recovered damages for pain and suffering in a tort action.   Because Plaintiff recovered tort damages, Defendant GEHA informed Plaintiff that, pursuant the GEHA health plan, Plaintiff was required to reimburse the $160,000 GEHA paid to cover Plaintiff's medical expenses.   Plaintiff then sought to have Defendant State Farm, her no-fault insurer, reimburse her for the cost of the medical expenses GEHA was now requiring her to pay, on the basis of her mother's policy with State Farm ("the State Farm Policy").

Defendant State Farm refused to pay, arguing that because Plaintiff elected a voluntarily coordinated benefits plan, State Farm was not obligated to pay Shields to reimburse GEHA.   The State Farm Policy in this case is a "P2" policy.   According to the language of the contract, a "P2"

policy is a policy for which an insured's coverages for allowable expenses and work loss are coordinated. The policy further explains that:

> Benefits shown as coordinated will be reduced by any amount paid or payable to ***you*** or any ***relative*** under any:
> 1.        vehicle or premise insurance;
> 2.        individual, blanket or group accident or disability insurance; and
> 3.        medical or surgical reimbursement plan.

(J.A. at 275 (emphasis in original).)  State Farm admits that Plaintiff's medical expenses are allowable expenses covered by its plan.  State Farm argues, however, that the initial payments made by GEHA constitute an "amount paid or payable . . . under any . . . individual, blanket or group accident or disability insurance."  Therefore, State Farm argues that Plaintiff, and not State Farm, should be required to bear the costs of the medical bills.

Plaintiff filed the instant action for declaratory relief in federal court against Defendants GEHA and State Farm requesting that the court clarify all parties' obligations under their respective insurance contracts, federal law, and the MNFIA.  In particular, Plaintiff requested the district court to order Defendant State Farm to reimburse GEHA on behalf of Plaintiff. The district court held that State Farm was obligated under its insurance policy with Plaintiff's mother to reimburse Plaintiff for the medical expenses she repaid to GEHA.  The district court reasoned that GEHA's initial payments were not "amounts paid" within the meaning of State Farm's policy because Plaintiff was required to reimburse GEHA.  In so holding, the district court relied on the Supreme Court of Michigan's decision in *Sibley v. Detroit Automobile Inter-Insurance Exchange,* 427 N.W.2d  528 (Mich. 1988)*.*  Defendant State Farm now appeals the district court's decision, contending that the district court's reliance on *Sibley* to interpret the State Farm Policy was improper and that the Michigan Court of Appeals decision in *Dunn v. Detroit Automobile Inter-Insurance Exchange*, 657 N.W.2d 153 (Mich. Ct. App. 2002), controls.

**II.**
**DISCUSSION**

**A.        Standard of Review**

This Court reviews a district court's grant of summary judgment *de novo*.  *Blackmore v. Kalamazoo*, 390 F.3d 890, 894-95 (6th Cir. 2004).  Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**B.        Analysis**

The State Farm Policy requires State Farm to reimburse Plaintiff for the cost of medical expenses that Plaintiff will reimburse to GEHA.   Contrary to State Farm's assertions, GEHA's intitial payments do not constitute "amounts . . . paid" within the meaning of the State Farm Policy, and thus, State Farm is not entitled to reduce Plaintiff's benefits by that amount.  GEHA's payments do not constitute amounts paid because the  Michigan Supreme Court's opinion in *Sibley* makes clear that benefits are not "paid" under the MNFIA where the insured is later required to reimburse the payor.

While the court in *Sibley* was technically interpreting the phrase "benefits provided" in Michigan Compiled Laws ("MCL") § 3109, and the issue in the instant case is the phrase "amount paid" which appears not in § 3109 but in the coordinated benefits clause of the State Farm Policy, the *Sibley* decision still controls the meaning of the language of the State Farm Policy because the

policy was drafted in accordance with the MNFIA. The fact that *Dunn* holds otherwise is irrelevant because *Dunn* is not good law. The Michigan Court of Appeals' decision in *Dunn* conflicts with the decision of the Michigan Supreme Court in *Sibley*, and therefore is not Michigan law.

### 1.     The MNFIA

The MNFIA regulates automobile insurance policies purchased by persons with cars registered in Michigan. Mich. Comp. Laws § 500.3101 *et seq.* It requires all car owners to maintain a no-fault insurance policy, which must include "personal protection insurance" coverage. Mich. Comp. Laws § 500.3105. The MNFIA defines personal protection insurance coverage to include reasonably necessary medical expenses and lost wages. Mich. Comp. Laws § 500.3107(1).

No-fault personal protection insurance coverage is meant to replace tort damages. Therefore, the MNFIA limits the available tort remedies for damages caused by car accidents. Mich. Comp. Laws § 500.3135. In limited circumstances, however, a victim of a car accident can sue for damages for pain and suffering. *Id.* The MNFIA prohibits no-fault insurers from requiring the insured to reimburse the insurance company from pain and suffering damages obtained in civil tort suits. Mich. Comp. Laws § 500.3116. This is in part because the damages obtained in civil suits for pain and suffering are not equivalent to the medical expenses and lost income that an insurance company pays the insured on a no-fault policy. *See Sibley*, 427 N.W.2d at 531.

Because the MNFIA requires automobile owners to maintain no-fault insurance, many Michigan car owners have coverage from two insurance policies. That is, they have health insurance and/or worker's compensation coverage in addition to a no-fault automobile insurance policy. To ease the expense of requiring drivers to maintain two duplicative insurance policies, MNFIA mandates that insurance companies offer coordinated benefits plans. Mich. Comp. Laws § 500.3109a; *see Smith v. Physicians Health Plan, Inc.*, 514 N.W.2d 150 (Mich. 1994). Under a coordinated benefits plan, a no-fault insurer must offer insurance at reduced premiums to persons with health care or worker's compensation coverage that duplicates the no-fault insurance policy's coverage. Mich. Comp. Laws § 500.3109a. The insured may then only recover from a no-fault insurance company to the extent that his or her reasonably necessary medical expenses and lost income have not been compensated through the primary health or worker's compensation plan. *Auto-Club Ins. Ass'n v. New York Life Ins. Co.*, 485 N.W.2d 695, 698 (Mich. 1992).

Similarly, the MNFIA permits no-fault insurers to deduct amounts paid to the insured pursuant to federal or state law from the amount the no-fault insurer pays to the insured pursuant to the no-fault insurance policy. MCL § 3109 states that "[b]enefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury." Like the provisions requiring the availability of coordinated benefits policies, § 3109 is aimed at reducing duplicative coverage and thereby reducing the overall cost of mandatory no-fault insurance.

### 2.     *Sibley v. Detroit Automobile Inter-Insurance Exchange*

In *Sibley*, the Michigan Supreme Court interpreted the "[b]enefits provided" language contained in MCL § 3109. The court expressly held that federal worker's compensation benefits that an insured receives but is later required to repay from the proceeds of a tort recovery for pain and suffering are not "[b]enefits provided," and thus that a no-fault insurer could not deduct such benefits from its own coverage. The insured in *Sibley* was a U.S. postal worker. *Sibley*, 427 N.W.2d at 529. Because he was injured on the job, he received worker's compensation payments through the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et. seq*. *Id.* The insured's no-fault insurance company subtracted the worker's compensation payments from its coverage based on MCL § 3109, a provision of the MNFIA that allowed no-fault insurers to deduct amounts

"provided" or "required to be provided" to the insured under federal or state law. Thereafter, the insured successfully instituted a civil tort action and obtained monetary compensation for pain and suffering. *Id.* at 529-30. Pursuant to FECA, the insured was required to reimburse the federal government from the insured's recently recovered damages for pain and suffering for the medical expenses and lost income the federal government had previously paid to the insured. *Id.* The insured then sued his no-fault insurer for the amount he was required to reimburse the government. *Id.*

The Michigan Supreme Court held in favor of the insured. *Id.* at 531. The court reasoned that requiring the insured to repay the federal government from the insured's tort damages would mean that the insured was covering his own medical expenses and lost wages despite the existence of a valid insurance policy. *Id.* The court rejected the insurance company's argument that the insured was receiving a windfall or duplicative payments. *Id.* The court reasoned that the pain and suffering damages were distinct from medical expenses and lost wages, and that Michigan law entitled the insured to all three types of damages. *Id.* Moreover, the court noted that Michigan law prohibits no-fault insurers from receiving reimbursement from tort recoveries. *Id.* at 530-31. If the no-fault insurer were not required to reimburse the federal government, and plaintiff was required to pay out of his tort damages, the MNFIA's prohibition on reimbursing no-fault insurers from tort damages would be circumvented. *Id.* The Court further implied in its brief discussion of preemption that a Michigan entity that attempted to require reimbursement from tort proceeds, in contrast to the federal government, would be unable to do so. *Id.*

The instant case is materially indistinguishable from *Sibley*. In this case, the insured received payment to cover medical expenses, that pursuant to federal law, she is required to repay from the proceeds of her tort recovery for pain and suffering damages. Because federal law preempts state law, Michigan cannot stop GEHA from requiring reimbursement. Consequently, here, as in *Sibley*, the insured is being forced to pay her own medical expenses out of her tort damages for pain and suffering. This contravenes the expressed intent of the Michigan legislature as embodied in MNFIA, which requires all car owners to maintain insurance coverage for medical expenses and prohibits no-fault insurers from seeking reimbursement from tort settlements. Mich. Comp. Laws §§ 3101, 3116. Furthermore, the Michigan legislature mandated coordinated benefits plans to avoid duplicative coverage, not to deny insured persons coverage altogether. *See Smith*, 514 N.W.2d at 154. Here the coverage is not duplicative because Plaintiff's tort damages are for pain and suffering and State Farm is covering Plaintiff's medical expenses. Thus, the fact that the State Farm Policy is coordinated with GEHA's policy is irrelevant. The insured maintains an insurance policy for medical expenses and should not be required to pay her medical expenses without help from her insurance carrier.

### 3.        *Dunn v. Detroit Automobile Inter-Insurance Exchange*

Defendant, however, asks this Court to apply the Michigan Court of Appeals decision in *Dunn*, as opposed to the Michigan Supreme Court's decision *Sibley*. The facts of *Dunn* are similar to those in *Sibley*. *Id.* at 154-55. In contrast to *Sibley*, however, the no-fault insurance company in *Dunn* did not attempt to deny coverage pursuant to § 3109 of Michigan Complied Laws, which allows a no-fault insurer to subtract benefits provided, or required to be provided, under federal or state law from its coverage, but rather under the terms of its own policy. *Id.* at 154, 159-60. The policy at issue was a coordinated benefits plan offered pursuant to MCL § 3109a. *Id.* at 159-60. The no-fault insurance company argued that the insured had voluntarily selected a lower premium plan for less coverage. *Id.* Thus, the company argued that it should not have to pay for benefits that the insured agreed to reimburse to another company under another insurance policy. *Id.* The *Dunn* court took the position that *Sibley* did not control the interpretation of a coordinated benefits plan. The court explained:

What distinguishes *Sibley* from the present case, however, is that in *Sibley*, the insured did not arrange a lower premium on the basis of such federal benefits; rather, insureds generally receive the benefit of lower premiums because the no-fault statute requires that state and federal benefits of that type be deducted from no-fault benefits. Insurers thus calculate actuarially the extent to which the general population of insureds will be able to avail itself of such benefits, and premiums are determined accordingly, without regard to the individual cases. Thus, in *Sibley*, the Court merely announced to the actuaries that they should consider only benefits to be paid and retained under such federal and state programs as being within the offset allowed. Here, in contrast, the ERISA-plan benefits are not provided "under the laws of any state or federal government," that is, from the public treasury, but rather by virtue of funding furnished by plaintiff's employer.

*Id.* at 160.

While this Court recognizes that *Dunn* is more analogous to the instant case than *Sibley* because the instant case involves the interpretation of a coordinated benefits plan and not the language of the MNFIA, we decline to apply *Dunn* to this case. This Court is required to apply the law it believes that the Supreme Court of Michigan would apply. *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988). "In that inquiry [this Court] may rely upon the analogous cases and relevant dicta in the decisional law of the State's highest court, opinions of the State's intermediate courts to the extent that they are persuasive indicia of State Supreme Court direction, and persuasive opinions from other jurisdictions. . . ." *Id.* This Court, however, is not bound by state appellate court decisions that conflict with decisions of the highest court of the State. *See id; J.C. Wykoff & Associates v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1485 (6th Cir. 1991) (citations omitted). *Dunn* is a state appellate court decision, which conflicts with *Sibley*, a state supreme court case, and thus *Dunn* is not controlling Michigan law and does not bind this Court.

Although *Dunn* interprets an insurance policy, and *Sibley* interprets a statute inapplicable to this action, *Dunn* nonetheless conflicts with *Sibley*. First, MCL § 3109 and MCL § 3109a, mandating coordinated benefits plans, were enacted for identical purposes. Both seek to eradicate duplicative insurance coverage – one by allowing subtraction of benefits provided pursuant to law, and the other by mandating policies that provide coverage only from damages not covered by other policies. *Compare Morgan v. Citizens Ins. Co. of Am.*, 442 N.W.2d 626, 648 (Mich. 1989) (discussing the purpose of MCL § 3109) *with Smith*, 514 N.W.2d at 154 (discussing the purpose of MCL § 3109a) *and Auto Club Ins. Ass'n*, 485 N.W.2d at 697 (same). Additionally, the language of MCL § 3109 and the coordinated benefits policy in *Dunn* – and in this case – are similar. MCL § 3109 refers to benefits "provided" or "required to be provided" and the coordinated benefits plans refer to benefits "paid" or "payable." *Dunn*, 657 N.W.2d at 154. Thus, in determining whether a benefit was provided under MCL § 3109 or paid under a coordinated benefits plan, this Court should assume that the Supreme Court of Michigan would take a consistent approach.

Second, the *Dunn* court's primary rationale conflicts with *Sibley*. The Michigan Court of Appeals based its holding in *Dunn* on the theory that the insured would receive duplicative benefits if allowed to keep his or her tort recovery and to receive no-fault insurance coverage. *Dunn*, 657 N.W.2d at 159-60. *Sibley* expressly holds, however, that such coverage is not duplicative because the tort recovery was for pain and suffering, whereas the insurance coverage was for medical benefits and lost income. *See Sibley*, 427 N.W.2d at 531.

Finally, and perhaps most importantly, the *Dunn* decision essentially allowed a no-fault insurer to receive reimbursement from tort damages. *See generally Dunn*, 657 N.W.2d at 153. As the Michigan Supreme Court noted in *Sibley,* by requiring an insured to pay for his or her own medical expenses from his or her tort recovery, the insurance company is saved from covering

medical expenses and the tort victim thereby loses her tort recovery. *Sibley*, 427 N.W.2d at 531. Thus, in essence, the insurance company is receiving reimbursement from the tort recovery as surely as if its policy required such reimbursement. *Id.* This is expressly prohibited by Michigan law. Mich. Comp. Laws § 500.3116.

Moreover, the *Dunn* court's argument that one who pays reduced premiums under a coordinated benefits plans should not receive coverage equal to one who pays full premiums is severely misguided. *See Dunn*, 657 N.W.2d at 268. Persons select coordinated benefits plans because they have *two* insurance plans and correspondingly two sets of premiums. Persons who pay full coverage and choose not to select a coordinated benefits plan theoretically do so because they do not have other coverage. Thus, they pay *one* non-reduced premium. Theoretically, neither party is paying more in premiums, and neither is receiving more or less coverage. Instead, the difference is to whom they are paying the premium, and who bears the final cost of coverage. This is implicit in the MNFIA, which expressly defines what a no-fault insurance company must cover. Mich. Comp. Laws § 500.3107.

Nonetheless, the concurring opinion would hold that *Dunn* is distinguishable from *Sibley* because *Dunn*, in contrast to *Sibley*, involved whether a no-fault insurer had an obligation to compensate the plaintiff for funds repaid to a *privately* funded employer health care plan. Thus, according to the concurring opinion, the *Dunn* court did not consider the question in this case, namely whether *Sibley*'s statutory interpretation of what constitutes "government benefits" should be applied to the employer health care provider's payments.

Whether the amount paid is a "government benefit" or a private benefit is irrelevant to the resolution of this case (as it was irrelevant to the resolution of *Dunn*). What is relevant is whether the benefit was "paid." Under the express terms of the contract at issue in this case, whether State Farm has a duty to reimburse Plaintiff does not hinge on whether GEHA's payments constitutes government benefits but on whether they constitute "amounts paid." The contract states that "[b]enefits will be reduced by any amount paid or payable to [Shields] under any . . . individual, blanket or group accident or disability insurance." (J.A. at 275.) In fact, the coordinated benefits clause we are tasked with interpreting in this case does not even mention the term "government benefits." (J.A. at 275.)

*Sibley* is relevant to this case not because it interpreted what constitutes a "government benefit" but because it interpreted when such benefits can actually be considered "provided." *See Sibley*, 657 N.W.2d at 529-31. The *Sibley* court concluded that an amount was not "provided" if it had to be repaid. *Id.* The *Sibley* court's interpretation of provided informs our interpretation of "paid." Consequently, the concurring opinion's attempt to distinguish *Dunn* is not well-taken.

### III.
### CONCLUSION

For the reasons set forth above, we **AFFIRM** the order of the district court.

---

**CONCURRENCE**

---

COOK, Circuit Judge, concurring.  I concur in the judgment reached by the majority, and I join the opinion in all respects other than I would distinguish *Dunn v. Detroit Auto. Inter-Ins. Exch.*, 657 N.W.2d 153 (Mich. Ct. App. 2002), rather than declare it "bad law."  In *Dunn*, the court interpreted a coordinated benefits clause to exclude temporary benefits provided by a privately-funded ERISA plan.  And this opinion (correctly I believe) interprets a coordinated benefits clause as not excluding temporary benefits provided by a FEHBA plan.  *Sibley* squarely held that temporary government benefits (under FECA) are not "benefits provided" under Mich. Comp. Laws § 500.3109.  Thus *Dunn* is distinguishable because that court had no occasion to interpret whether, given *Sibley*'s statutory holding, a coordinated benefits clause employing language similar to the statute (and parallel to that used here) should be interpreted to exclude temporary government benefits.