*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0231p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STEFANIE SHIELDS,

        *Plaintiff-Appellant,*

       *v.*

GOVERNMENT EMPLOYEES HOSPITAL ASSOCIATION,
INC. and STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        *Defendants-Appellees.*

No. 05-2346

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 03-00395—Wendell A. Miles, District Judge.

Argued: April 25, 2007

Decided and Filed: June 20, 2007

Before: SILER and GILMAN, Circuit Judges; ZATKOFF, District Judge.[*]

---

**COUNSEL**

---

**ARGUED:** Brent W. Boncher, SCHENK, BONCHER & RYPMA, Grand Rapids, Michigan, for
Appellant. Raymond J. Williams III, HEWSON & VAN HELLEMONT, Warren, Michigan, for
Appellees. **ON BRIEF:** Brent W. Boncher, Frederick J. Boncher, SCHENK, BONCHER &
RYPMA, Grand Rapids, Michigan, for Appellant. Raymond J. Williams III, Michael M. Carey,
HEWSON & VAN HELLEMONT, Warren, Michigan, for Appellees.

---

**OPINION**

---

      RONALD LEE GILMAN, Circuit Judge. After suffering severe injuries in an automobile
accident, Stefanie Shields brought a declaratory action against her two insurers, Government
Employees Hospital Association, Inc. (GEHA) and State Farm Mutual Automobile Insurance
Company (State Farm). GEHA initially paid significant sums for Shields's medical treatment, while
State Farm paid nothing due to a benefits-coordination clause in its policy. Later, however, GEHA
demanded reimbursement from the proceeds that Shields had received in a third-party tort settlement

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting
by designation.

as a result of the accident. Shields subsequently brought this declaratory action to challenge the validity of GEHA's demand for reimbursement or, alternatively, to require State Farm to replace the amount that she would lose as a result of GEHA's reimbursement claim.

Shields's latter argument prevailed. The district court, however, awarded only a portion of the attorney fees and none of the "penalty interest" sought by Shields. Specifically, the court allowed fees only with respect to Shields's claim against State Farm, excluding her claim against GEHA. The court, moreover, declined to grant Shields any penalty interest because she had failed to establish precisely when State Farm's obligation to pay her became overdue. Shields's appeal is limited to the district court's attorney-fee and penalty-interest determinations. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.    Factual background

The underlying facts are undisputed, as this court noted in State Farm's earlier appeal in this matter. *Shields v. Gov't Employees Hosp. Assoc.*, 450 F.3d 643, 645 (6th Cir. 2006). Briefly summarized, Shields was severely injured in an automobile accident in February of 2003. *Id*. A 70-pound piece of steel fell from the back of a truck and crashed into her car, causing Shields "extensive medical injuries." *Id.* At the time of the accident, Shields was covered by both her mother's government-employee benefit plan with GEHA and by her mother's no-fault automobile insurance policy with State Farm. *Id*. The State Farm policy coverage for medical expenses and lost wages, however, was "coordinated." *Id*. This meant that, in exchange for a lesser premium, the policy benefits payable by State Farm were subject to reduction by any amount "paid or payable" to Shields under any other "individual, blanket or group accident or disability insurance." *Id*.

GEHA paid $162,074 in benefits to cover Shields's medical expenses. Because GEHA provides insurance for federal employees under the Federal Employees Health Benefits Act, it is authorized to seek reimbursement from funds paid to a claimant out of a related tort recovery. *Id*. at 648. Although seeking reimbursement from a claimant is contrary to the provisions of Michigan's No Fault Insurance Act (MNFIA), federal law preempts Michigan's statutory scheme. *Id*. Shields ultimately obtained a settlement pursuant to her tort claim against the trucking company involved in her accident. *Id*. at 645. Neither the amount nor the date of the settlement are set forth in the record. On April 30, 2003, GEHA filed notice of its lien against any settlement that Shields might obtain. Shields, in turn, sent a demand letter on May 15, 2003 seeking payment from State Farm for all of her medical expenses that GEHA had initially covered.

### B.    Procedural background

In June of 2003, Shields filed a lawsuit in federal district court against both GEHA and State Farm. Jurisdiction was based upon diversity of citizenship. This court, in ruling on State Farm's separate appeal from the district court's summary judgment order, described Shields's suit as simply seeking to "clarify all parties' obligations." *Id*. at 645. According to State Farm, however, Shields took the position that "GEHA was not entitled to reimbursement . . . or alternatively . . . that [GEHA] must seek payment directly from State Farm." Shields agrees that she took a position "questioning the legitimacy of GEHA's right to seek repayment." In the alternative, Shields sought "a decision that State Farm was ultimately liable for the same medical expenses [for which GEHA paid] and should have paid [her]." GEHA, State Farm, and Shields all filed motions for summary judgment.

The district court ultimately granted summary judgment in favor of GEHA, granted Shields's motion for summary judgment as against State Farm, and denied State Farm's motion. Essentially, the court held that GEHA had properly sought reimbursement out of Shields's third-party tort

recovery, and that this reimbursement triggered State Farm's obligation to pay Shields under the latter's coordinated policy. The court explained that "State Farm may not subtract the amount initially paid by GEHA for [Shield's] medical expenses, and repaid by [Shields], from the . . . insurance benefits it would otherwise be responsible for paying." Moreover, the district court's summary judgment order provided that Shields was entitled to recover attorney fees and 12% penalty interest on State Farm's "overdue" payment. State Farm appealed the merits of the district court's summary judgment order, but did not address fees or interest. *Shields*, 450 F.3d at 644. In June of 2006, this court issued an opinion affirming the district court's summary judgment disposition. *Id*. at 651.

During the pendency of State Farm's merits appeal, Shields filed a petition for the payment of $29,739 in itemized attorney fees and $36,343 in penalty interest. GEHA filed a motion opposing Shields's petition, but State Farm did not. The district court granted only the portion of Shields's itemized fees that it determined were attributable to her claims against State Farm alone, and awarded just half of the fees that were attributable to Shields's claims against GEHA and State Farm jointly. In total, the court awarded Shields $10,513 in attorney fees. Regarding penalty interest, the district court awarded nothing at all because, based on the information provided by Shields, "it [was] impossible for the court to determine when State Farm became liable, and therefore, when it became dilatory." Shields subsequently filed a motion for reconsideration, which the district court denied. The sole issues in the present appeal concern the district court's determinations regarding attorney fees and penalty interest.

## II. ANALYSIS

### A.　　Standard of review

Under both Michigan and federal law, a trial court's award of attorney fees is generally reviewed under the abuse-of-discretion standard. *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 312 (6th Cir. 1997); *Shanafelt v. Allstate Ins. Co.*, 552 N.W.2d 671, 675 (Mich. Ct. App. 1996). The district court's factual determinations, on the other hand, are reviewed under the clearly erroneous standard, and its legal interpretations are reviewed de novo. *Blackard v. Memphis Area Med. Ctr. for Women, Inc.*, 262 F.3d 568, 572 (6th Cir. 2001). The substantive issues in this diversity action are governed by Michigan law. *See Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

### B.　　Entitlement to attorney fees under § 500.3148

Michigan law provides that a claimant's attorney fees "shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." Mich. Comp. Laws § 500.3148(1). The district court's initial order granting summary judgment in favor of Shields explained that

> [i]n this case, the facts were not in question and there was no issue of constitutional law. Michigan's Supreme Court had constructed [sic] the relevant statutory provision in regard to federal benefits, which is the situation here. State Farm relied on a Court of Appeals decision addressing benefits paid by the insured's employe[r], and therefore, not applicable here. In light of the holdings in *Sibley* and *Gunsell*, the court finds that State Farm's refusal to reimburse Plaintiff was unreasonable. Accordingly, the court awards Plaintiff her reasonable attorney fees and costs incurred in bringing this action.

Although State Farm appealed the district court's grant of summary judgment, it did not raise the issue of attorney fees in that appeal. State Farm also failed to respond to Shields's petition for attorney fees and interest, even though GEHA objected separately. Shields accurately points out,

moreover, that State Farm filed no cross-appeal from the district court's partial grant of attorney fees; only Shields presently appeals the partial fee award.

To the extent that State Farm seeks to argue for the first time on appeal—Shields's appeal, no less—for reversal of the fee award based on the reasonableness of its refusal to pay under § 500.3148, its argument is not well-taken. *See Ford Motor Credit Co. v. Aetna Cas. and Sur. Co.*, 717 F.2d 959, 962 (6th Cir. 1983) (quoting *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479, 480 (1976), for the proposition that, in the absence of a cross-appeal, "the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary"); *see also Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) ("[T]he general rule is that this court will not consider issues not raised in the district court.").

Even considering State Farm's reasonableness argument for the limited purpose of refuting Shields's claim for an increased award, we conclude that the argument lacks merit. The contention that State Farm reasonably relied on a single Michigan Court of Appeals decision in refusing to pay Shields was undercut by this court's ruling in State Farm's earlier appeal on the merits. That ruling, issued after the briefs were submitted in the present appeal, unanimously affirmed the district court's partial grant of summary judgment in favor of Shields. *Shields*, 450 F.3d at 651. In reaching its conclusion, this court relied primarily on the Michigan Supreme Court's holding in *Sibley v. Detroit Automobile Inter-Insurance Exchange*, 427 N.W.2d 528 (Mich. 1988) (holding that a no-fault insurer's payment obligations were triggered when a claimant's federal insurer, which had initially paid benefits, sought reimbursement out of the claimant's tort recovery).

This court in *Shields* was split only as to whether the contrary opinion in *Dunn v. Detroit Automobile Inter-Insurance Exchange*, 657 N.W.2d 153 (Mich. Ct. App. 2003), upon which State Farm relied, was either bad law in light of *Sibley* or simply inapposite. *Shields*, 450 F.3d at 648-51. Holding that *Dunn* conflicted with *Sibley*, the *Shields* majority declined to apply it, whereas the concurring opinion found *Dunn* to be distinguishable. *Id* at 651. Regardless of whether *Dunn* is contrary to binding precedent or is simply inapposite, however, this court ultimately agreed with the district court that the Michigan Supreme Court's decision in *Sibley* compelled a result favorable to Shields, and that *Dunn* was not controlling law. *Id*. The district court thus did not abuse its discretion in determining that State Farm's refusal to pay was unreasonable under § 500.3148.

## C.    Amount of attorney fees awarded

In its partial grant of Shields's petition for attorney fees, the district court awarded fees only for the work Shields's counsel had performed regarding the claim against State Farm. The court declined to award fees for work performed in relation to Shields's claim against GEHA, and the court awarded half of the fees sought in relation to the work that overlapped both claims. Shields argues on appeal that the district court erred in so apportioning the fees, contending that it instead should have granted her petition for fees in full, irrespective of the claim to which the work related.

The district court, in so apportioning Shields's attorney fees, relied primarily on the plain language of Mich Comp. Laws § 500.3148, which provides for the availability of attorney fees pursuant to litigation under the MNFIA. Section 500.3148(1) expressly provides for attorney fees only "for advising and representing a claimant in an action for personal or property protection insurance benefits which are *overdue*." (Emphasis added.) The district court reasoned that, although Shields's claim against State Farm sought benefits "overdue" within the meaning of the statute, her claim against GEHA simply sought a ruling that GEHA was not entitled to reimbursement out of Shields's third-party tort recovery for benefits that it had already paid. This claim against GEHA clearly falls outside the statutory text that includes only actions for "insurance benefits which are overdue."

Shields's primary argument in response asserts that, because State Farm was the "but-for" cause of Shields's litigation against both insurers, her attorney fees for both claims are properly chargeable to State Farm. This argument at first blush carries some appeal. After all, had State Farm simply agreed to pay Shields instead of unreasonably refusing to do so, Shields would have had no reason to object to GEHA's claim for reimbursement because the entire transaction would have had no net effect on her recovery. Shields asserts that her claim against GEHA was therefore simply part and parcel of her response to State Farm's refusal to pay. In other words, "questioning the legitimacy of GEHA's right to seek repayment" was simply another "avenue[] to protect [Shields]" from her potential loss resulting from State Farm's action.

Intertwined with Shields's but-for argument is her assertion that the spirit or intent of Michigan's statutory scheme is designed to protect claimants from bearing the legal costs associated with recalcitrant insurers or squabbles between insurers. Indeed, Michigan courts have held that the MNFIA is to be "liberally construe[d]" in favor of intended beneficiaries. *Farmers Ins. Exch. v. AAA of Michigan*, 671 N.W.2d 89, 91 (Mich. Ct. App. 2003).

Shields also relies heavily on *Kalin v. Detroit Automobile Inter-Insurance Exchange*, 316 N.W.2d 467 (Mich. Ct. App. 1982). In *Kalin*, the plaintiff was struck by a vehicle while in the process of entering his own parked delivery truck. *Id.* at 469-70. The dispute essentially boiled down to whether Kalin's insurance carrier or that of the driver who struck him would pay for Kalin's medical expenses. *Id.* at 472-74. Regarding Kalin's request for attorney fees, the court ultimately affirmed the trial court's award of half of Kalin's attorney fees against each insurer, reasoning that "[a] claimant who is clearly entitled to no-fault benefits should not be forced to hire an attorney merely because the circumstances of his accident create problems of priority among insurers." *Id.* at 474. Furthermore, the court explained that "insurance companies can avoid liability for attorney fees by sharing the payment of such a claimant's no-fault benefits and then settling their differences among themselves." *Id*.

Shields's reliance on *Kalin*, however, is misplaced. The present dispute, unlike *Kalin*, is not simply a fight between two insurers with Shields on the sidelines. State Farm never challenged the legitimacy of GEHA's claim against Shields's recovery. Instead, the only party contesting the legitimacy of GEHA's claim was Shields herself, and she lost on that argument. Furthermore, Shields ultimately cannot overcome the plain statutory language that provides for attorney fees only in relation to an action for "insurance benefits which are overdue." Mich. Comp. Laws § 500.3148(1). Shields's claim against State Farm falls within the statutory fee provision, but her claim that GEHA had no right to reimbursement does not.

Alternatively, an "action" under § 500.3148(1) could arguably be construed to encompass both a claim against an insurer for overdue benefits as well as other related claims. The Michigan Supreme Court, however, implicitly adopted a different view in *Proudfoot v. State Farm Mutual Insurance Co.*, 673 N.W.2d 739 (Mich. 2003). In *Proudfoot*, the claimant had been rendered disabled by an automobile accident and consequently had to retrofit her home to make it wheelchair accessible. *Id.* at 740. She later submitted an $815.10 architect's bill to State Farm, her no-fault insurer, for preparing building plans. *Id.* at 741. State Farm, however, denied the claim as an unreasonable expense under its policy. Proudfoot filed suit in state court before the actual modification work commenced. *Id.*

The Michigan Supreme Court affirmed the lower court's declaratory judgment that the home modifications were reasonably necessary and therefore should have been covered by State Farm. *Id.* at 743. Regarding attorney fees, however, the Michigan Supreme Court affirmed the lower court's grant of fees only with respect to Proudfoot's claim that State Farm should have covered the $815.10 architect's fee, because only that claim was "overdue." *Id.* at 744. Other related elements

of Proudfoot's action regarding State Farm's liability for future expenses, the Court held, did not fall within the § 500.3148 definition of allowable fees.  *Id.*

The Michigan Supreme Court has thus differentiated between attorney fees attributable to recovering "overdue" benefits under § 500.3148 and those attributable to other aspects of the litigation not covered by that statute.  Shields's attempt to combine the noncompensable work that her counsel performed in relation to the GEHA claim with the compensable work performed in relation to the State Farm claim is inconsistent with Michigan law.  Moreover, Shields's policy arguments notwithstanding, analogous scenarios arise frequently in litigation.  A civil rights plaintiff, for instance, who raises a claim under 42 U.S.C. § 1983 for which attorney fees might be available often must determine whether to also raise related state-law claims for which fees are generally not recoverable.  Faced with this strategic cost-benefit choice, Shields's counsel chose to litigate a flawed claim against GEHA in addition to the meritorious claim against State Farm.  Michigan law does not support awarding Shields her attorney fees in relation to her failed claim that GEHA was not entitled to reimbursement.

### D.        Penalty interest

As explained above, the district court's initial order granting summary judgment in favor of Shields also provided that she was "entitled to interest on the overdue payment at the rate of 12% per year."  The district court's subsequent order, however, denied Shields any penalty-interest award after it concluded that she had not presented adequate information to determine when State Farm became delinquent on the payment.  Ultimately, the district court reaffirmed its decision by denying Shields's petition for reconsideration of this issue.

Under Michigan law, a claimant is entitled to 12% penalty interest on "overdue" benefits.  Mich. Comp. Laws § 500.3142(3).  Michigan caselaw employs the term "penalty interest" to distinguish the high rate of interest recoverable under § 500.3142 from ordinary statutory interest.  *See, e.g.*, *Shanafelt v. Allstate Ins. Co.*, 552 N.W.2d 671, 679 (Mich. Ct. App. 1996) ("[W]e would note that a plaintiff may recover both statutory and penalty interest.").  Overdue benefits are defined as benefits "not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained."  Mich. Comp. Laws § 500.3142(2).  Shields petitioned the district court below for $36,343 in penalty interest.  The spreadsheet attached to her petition shows that this sum is the result of calculating 12% interest on each individually itemized medical treatment billed, beginning on the date of the particular treatment and running through December 31, 2004.

Starting the interest calculation from the date on which each medical service was rendered, however, is unjustified under the circumstances of this case.  The only overdue benefit at issue is the payment that State Farm refused to make *in response to* GEHA's reimbursement claim, which arose long after the treatments.  Relying on *Shanafelt*, Shields argues to the contrary that State Farm's obligations arose as it received the medical bills shortly after each treatment was rendered, and that the action and rights of GEHA are irrelevant.  In *Shanafelt*, the claimant brought suit against a no-fault liability insurer regarding an "uncoordinated" policy pursuant to which the insurer had denied a claim for benefits.  552 N.W.2d at 673.  The court held that the claimant incurred expenses as treatment was administered, irrespective of the fact that the claimant's health insurance policy was already covering the expenses.  *Id.* at 676.

*Shanafelt*, however, is inapposite because, as the court in that case emphasized, "one salient fact immediately becomes apparent:  the instant plaintiff has brought suit against the insurer providing *uncoordinated* coverage."  *Id.* at 678 (emphasis in original).  Benefits under an uncoordinated policy become payable irrespective of another insurer's rights and actions.  In the present case, however, the State Farm policy was *coordinated*, meaning that benefits were not payable at the time the medical care was rendered because they were otherwise covered by GEHA,

Shields's primary insurer. Indeed, had Shields not obtained a third-party settlement from which GEHA was entitled to recoup the benefits it had paid, State Farm would never have had to pay Shields any medical benefits at all. *See Shields*, 450 F.3d at 646 (holding that State Farm's obligation to pay arose only because, once GEHA demanded reimbursement, GEHA's initial payment to Shields no longer qualified as an "amount paid" under the coordination clause of State Farm's policy). Shields's argument that penalty interest should begin accumulating from the date that the medical care was administered thus runs contrary to both law and logic.

The district court ultimately denied Shields's petition for penalty interest on the ground that she had not provided "all the necessary figures and dates to determine when, and to what extent, State Farm's obligation to reimburse [Shields] arose." We agree. As explained above, the district court properly determined that State Farm's obligation arose as a result of—and thus only after—GEHA exercised its right to reimbursement by asserting a lien against Shields's settlement for a specific amount. The record simply contains no indication of precisely when and in what amount Shields obtained the settlement funds, nor does it demonstrate when and in what amount GEHA actually sought reimbursement. Although the record does reflect that GEHA submitted a notice of its lien on April 30, 2003 against any settlement Shields might receive, this letter provides no indication of when or if a settlement had been reached, nor of the settlement amount.

In its denial of Shields's motion to reconsider, the district court also referred to two other documents submitted by Shields. First, the court took note of an April 17, 2003 letter from GEHA stating that its reimbursement lien claim totaled only $1,734.00 at that time, but that GEHA would continue to update that figure "until settlement." This letter plainly fails to establish when GEHA asserted a lien for the full $162,074. Second, the court referenced a demand letter sent by Shields to State Farm on May 15, 2003 that sought payment of the full amount. As the district court explained, however, even assuming that a settlement had been reached by the date of Shields's demand letter, the extent of GEHA's *actual* reimbursement claim at that point (and State Farm's resultant obligation) cannot be determined from the record.

Shields's extensive briefing on appeal leaves unanswered the question of why, particularly after the district court denied her petition for penalty interest, she did not simply submit documentation regarding the date of the settlement agreement and the extent of GEHA's claim for reimbursement in her petition for reconsideration. Such documentation would likely have allowed the district court to determine the proper date from which to begin calculating the penalty interest that Shields was due. Without establishing the date or dates on which State Farm's obligation arose, however, Shields cannot establish when payment became "overdue" for the purpose of calculating penalty interest under § 500.3142. The district court's determination that Shields failed to produce sufficient evidence to ascertain precisely when State Farm's obligation arose for the purpose of calculating penalty interest, therefore, was not clearly erroneous.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.