NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0331n.06

No. 12-1887

FILED

Apr 28, 2014

DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**ARTHUR HILL, JR.,**

    Plaintiff-Appellant,

**v.**

**CITIZENS INSURANCE COMPANY OF AMERICA,**

    Defendant -Appellee,

and

**ARVINMERITOR, INC. HEALTH & WELFARE PLAN**,

    Defendant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

---

**BEFORE: MOORE, CLAY, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Arthur Hill appeals from the district court's grant of summary judgment to Citizens Insurance Company of America (Citizens) in this insurance coverage dispute. We **AFFIRM**.

**I.**

The facts are undisputed. Hill was catastrophically injured in a July 2009 motor-vehicle accident with an at-fault uninsured driver in Oakland County, Michigan. ArvinMeritor, Hill's employer since 1988, paid Hill's medical expenses, approximately $480,000.00, pursuant to its

ERISA-governed employee benefit plan, former Defendant ArvinMeritor Inc. Health & Welfare Plan (the Plan).

Hill was also covered under a no-fault auto policy issued by Citizens that provided personal-injury-protection (PIP) insurance in accordance with Michigan law, but only on a coordinated, "excess"[1] basis. Citizens also provided Hill uninsured motorist (UM) coverage under the same policy, under which it paid Hill $500,000 in settlement of his non-economic damages, i.e., pain and suffering.

The Plan sought reimbursement from Hill out of the UM settlement proceeds. Hill forwarded the Plan's reimbursement demand to Citizens, asserting that Citizens had an obligation to indemnify him against the Plan's demand. After Citizens refused, Hill brought suit against Citizens in state court, seeking indemnification in the event that the Plan succeeded in obtaining reimbursement. Citizens counterclaimed, relying on the coordinated, excess-only nature of its PIP coverage, and sought a declaratory judgment that it was not obligated to indemnify Hill against the Plan's subrogation/reimbursement claim. The state court ruled in Citizens' favor, *Hill v. Citizens Ins. Co. of Am.*, Oakland Cnty. Cir. Court (No. 10-111539-NF, Nov. 30, 2011), and the Michigan Court of Appeals affirmed. *Hill v. Citizens Ins. Co. of Am.*, No. 304700, 2012 WL 4512571 (Mich. Ct. App. Oct. 2, 2012). The state court expressly did not resolve "(1) the priority dispute between [the Plan] and Citizens to determine the primary insurer for [Hill]'s economic damages and (2) whether [Hill] must reimburse [the Plan]." *Id*. at *3.

---

[1]Hill opted to subordinate Citizens' PIP coverage with his other insurance coverage in exchange for a reduced premium. *See* Mich. Comp. Laws § 500.3109a.

While his appeal in the state-court action was pending, Hill filed the instant action against the Plan and Citizens in federal district court, seeking injunctive and other equitable relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(3). Hill sought an injunction barring the Plan from seeking reimbursement from his UM-benefits settlement and a declaration that Citizens is obliged to reimburse the Plan for amounts the Plan paid for his medical care. The Plan counterclaimed, seeking a declaration that it is entitled to enforce the Plan's reimbursement and subrogation provision. In the alternative, the Plan crossclaimed against Citizens, seeking a declaration that the Plan's coverage is secondary to Citizens' no-fault insurance coverage such that it is entitled to reimbursement from Citizens for amounts the Plan paid for Hill's medical care.

On cross-motions for summary judgment, the district court granted Citizens' motion in full (including a declaration that the Plan is primary to Citizens' policy for purposes of covering Hill's accident-related costs), granted the Plan's motion in part (i.e., its request for declaratory judgment that it has a right to seek reimbursement from the proceeds of Hill's UM settlement), and denied Hill's motion.

## II.

Several issues are not before us. First, priority of coverage is no longer disputed, Hill having conceded at argument that the Plan is primary under the coordination-of-benefits provision. Second, the issue whether Citizens is required to indemnify Hill for UM benefits he is required to repay to the Plan was resolved by the state court. And third, the issue whether the Plan has a right to seek

3

reimbursement from the proceeds of Hill's UM settlement is not before us given that Hill and the

Plan stipulated to dismiss the Plan with prejudice after both appealed to this court.

The sole remaining issue is whether the Plan has a right to reimbursement from Citizens for

amounts the Plan paid for Hill's medical care; that is, whether under the Plan's

subrogation/reimbursement provision[2] the Plan has the right to recover PIP payments from Citizens.

Hill argues that under ERISA, the Plan has the authority to interpret what its language means

and the district court was obliged to accord that interpretation the highly deferential review of

---

[2]The Plan provides in pertinent part:

**Third Party Reimbursement (Subrogation)**
Subrogation is the substitution of one person or entity in the place of another with reference to a lawful claim, demand or right. Immediately upon paying or providing any benefit, we shall be subrogated to and shall succeed to all rights of recovery, under any legal theory of any type, for the reasonable value of any services and benefits we provided to you, from any or all of those listed below.

In addition to any subrogation rights and in consideration of the coverage provided by this Summary Plan Description, we shall also have an independent right to be reimbursed by you for the reasonable value of any services and benefits we provide to you, from any or all of the following:
. . . .
1. Any person or entity who is or may be obligated to provide benefits or payments to you, including benefits or payments for underinsured or uninsured motorist protection, no-fault or traditional auto insurance, medical payment coverage (auto, homeowners or otherwise), workers' compensation coverage, other insurance carriers or third party administrators.

2. Any person or entity who is liable for payment to you on any equitable or legal liability theory.
. . . .
You agree as follows:
. . . .
3. That we have the sole authority and discretion to resolve all disputes regarding the interpretation of the language stated herein.
. . . .
4. That regardless of whether you have been fully compensated or made whole, we may collect from you the proceeds of any full or partial recovery that you or your legal representative obtain, whether in the form of a settlement (either before or after any determination of liability) or judgment, with such proceeds available for collection to include any and all amounts earmarked as non-economic damage settlement or judgment.

PID 279-80.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Although this is a correct statement of ERISA law, Hill's argument fails nonetheless because the interpretation Hill advances on appeal was not advanced by the Plan, and thus is entitled to no deference. Further, no party argued below that *Firestone* deference applies. On appeal, Hill offers an alternative reading of the Plan's language that gives effect to the Plan's coordination-of-benefits provision by making the Plan primary in the sense that the Plan pays first and Plan policy determines benefits, but he then cabins that section and finds a right to recover those benefits from Citizens in the Plan's separate subrogation/reimbursement provision. Although the Plan's subrogation/reimbursement provision states in pertinent part that "we have the sole authority and discretion to resolve all disputes regarding the interpretation of the language stated herein," Hill conceded at oral argument, as he was bound to do, that the interpretation he advances on appeal is not the interpretation the Plan itself advanced before the district court, and that the Plan's position in the district court—that Citizens' coverage is primary—is not supported by the Plan's language. Thus, we must reject Hill's argument and affirm the district court.

Our affirmance notwithstanding, we observe that Hill's contention that Michigan's no-fault act was not intended to operate as it has in this case is well taken. In its decision in Hill's action against Citizens, the Michigan Court of Appeals followed a prior state court of appeals panel's decision in *Dunn v. Detroit Automobile Inter-Insurance Exchange*, 657 N.W.2d 153 (Mich. Ct. App.

2002), but noted its disagreement with *Dunn* and its agreement with this court's decision in *Shields*

*v. Government Employees Hospital Association, Inc.*, 450 F.3d 643 (6th Cir. 2006)[3]:

> While we must follow *Dunn*, we find that the sixth court of appeals's decision in *Shields* is convincing.
>
> The plaintiff in *Shields* was injured in an automobile accident and insured by both a coordinated Michigan no-fault policy issued by State Farm and a Government Employees Hospital Association (GEHA) benefits plan. *Shields*, 450 F.3d at 645. GEHA paid the plaintiff over $160,000 in medical expenses. *Id.* The plaintiff then recovered pain-and-suffering damages in a tort claim. *Id.* Pursuant to the terms of her GEHA benefits plan, the plaintiff reimbursed GEHA out of her tort recovery. *Id.* The plaintiff then sought to have State Farm reimburse her for the cost of the medical expenses, but State Farm refused on the basis that, under the language of the plaintiff's coordinated no-fault policy, the payment initially made by GEHA was "paid or payable." *Id.*
>
> The sixth circuit court of appeals held that State Farm was required to reimburse the plaintiff for the cost of her medical expenses. *Id.* at 644. When analyzing the issue, the *Shields* court first addressed the Michigan Supreme Court's opinion in *Sibley* [*v. Detroit Auto. Inter-Ins. Exch.*, 427 N.W.2d 528 (Mich. 1988),] and opined that its case was "materially indistinguishable from *Sibley*," explaining as follows:
>
>> In this case, the insured received payment to cover medical expenses, that pursuant to federal law, she is required to repay from the proceeds of her tort recovery for pain and suffering damages. Because federal law preempts state law, Michigan cannot stop GEHA from requiring reimbursement. Consequently, here, as in *Sibley*, the insured is being forced to pay her own medical expenses out of her tort damages for pain and suffering. This contravenes the expressed intent of the Michigan legislature as embodied in [the] [Michigan No–Fault Insurance Act,] MNFIA, which requires all car owners to maintain insurance coverage for medical expenses and prohibits no-fault insurers from seeking reimbursement from tort settlements. Mich. Comp. Laws §§ 3101, 3116. Furthermore, the Michigan legislature mandated coordinated benefits plans to avoid duplicative coverage, not to deny insured persons coverage altogether. *See Smith*

---

[3]*Shields* was overruled in part on other grounds in *Adkins v. Wolever*, 554 F.3d 650, 652–53 (6th Cir. 2009).

[*v. Physicians Health Plan, Inc.*,] 514 N.W.2d [150,] 154 [(Mich. 1994)].

\* \* \*

[T]he *Dunn* court's primary rationale conflicts with *Sibley*. The Michigan Court of Appeals based its holding in *Dunn* on the theory that the insured would receive duplicative benefits if allowed to keep his or her tort recovery and to receive no-fault insurance coverage. *Sibley* expressly holds, however, that such coverage is not duplicative because the tort recovery was for pain and suffering, whereas the insurance coverage was for medical benefits and lost income.

Finally, and perhaps most importantly, the *Dunn* decision essentially allowed a no-fault insurer to receive reimbursement from tort damages. As the Michigan Supreme Court noted in *Sibley*, by requiring an insured to pay for his or her own medical expenses from his or her tort recovery, the insurance company is saved from covering medical expenses and the tort victim thereby loses her tort recovery. Thus, in essence, the insurance company is receiving reimbursement from the tort recovery as surely as if its policy required such reimbursement. This is expressly prohibited by Michigan law[, MCL 500.3116].

*Hill*, 2012 WL 4512571 at \*7–9 (Mich. Ct. App. Oct. 2, 2012).

Although *Dunn* remains good law in Michigan, it subverted one of the basic foundations of the no-fault scheme with the result that instead of simply being denied double coverage, insureds who coordinated are deprived of the very PIP benefits they contracted for in their no-fault policies.

We **AFFIRM** the grant of summary judgment to Citizens.